NEW YORK LIFE INSURANCE CO. v. FREDERICK H. LECKS

165 So. 50.
Division B.
Opinion Filed April 27, 1935.
On Rehearing January 16, 1936.

128

*Doggett, McCollum, Howell & Doggett,* for Plaintiff in Error;

*Alden S. Bradley,* for Defendant in Error.

ELLIS, P. J.—The writ of error is taken to a judgment of the Circuit Court for Putnam County in favor of the plaintiff Lecks against the New York Life Insurance Company on two policies of life insurance containing disability benefit clauses under which the company agreed to pay to Lecks twelve dollars and a half each month on each policy during the lifetime of the insured, also to waive the payment of premiums if the insured became wholly and presumably permanently disabled before he became sixty years of age.

Each policy was written for twelve hundred and fifty

dollars in case of death. The beneficiary named in each was the mother of the insured Lecks. One policy was issued in December, 1923, and the other was issued in November, 1925. The annual premium required to be paid on the older policy, or one first issued, was forty-five dollars and forty-six cents. The premium required to be paid on the latter policy was forty-six dollars and ninety-nine cents annually.

On December 20, 1930, the insured became wholly disabled by bodily injuries. The Insurance Company, upon being notified of the injuries sustained by Lecks, paid to him the monthly disability benefits provided for under the policies up to and including November 20, 1932, a period of nearly one year and eleven months. On that date it ceased to make payments and demanded of Lecks the payment of the premium of $45.46, which became due on the face of the policy on December 27, 1932, which the assured Lecks paid to prevent a lapse of the policy.

In June, 1933, Frederick H. Lecks, the insured, brought his action against the Insurance Company to recover the amount due as disability benefits under the policies since the last payment; the recovery of the premium of $45.45 paid on one of the policies under protest, and to prevent a lapse of the policy and for attorney's fees.

A motion was made by counsel for the Insurance Company to strike from the declaration so much as demanded a return of the premium of $45.46, upon the ground that it was voluntarily made without duress or coercion exercised by the company, so that the plaintiff was estopped from claiming a return of it. That motion was overruled.

The company interposed pleas denying the physical disability of the plaintiff within the meaning of the insurance contract since November 20, 1932, and denied that he was

prevented by such disability from engaging in any occupation whatsoever for remuneration or profit.

There was a trial of the case upon the issues presented by the pleas and a verdict was obtained by the plaintiff in the sum of $231.59, which included the amount of the premium of $45.46 paid by the plaintiff on one of the policies of insurance under protest as alleged. The verdict also found for the plaintiff the further sum of $212.50 as attorneys' fees. Judgment was entered upon the verdict. A motion for a new trial was overruled and the defendant Insurance Company took a writ of error.

Counsel for plaintiff in error urge two propositions in the brief for consideration by this Court. The first is that the plaintiff is not entitled to recover from the company the insurance premium of $45.46 paid by him because it does not appear from the pleadings that it was paid under duress or coercion. The second proposition is that the plaintiff should not recover attorneys' fees. That proposition rests upon the fact, which it is claimed is established by the evidence, that the liability of the company after November 20, 1932, was questioned in good faith; that a reasonable doubt existed as to the disability of the insured within the meaning of the policy of insurance after the above mentioned date which could be determined only by a court of competent jurisdiction after a full investigation; therefore the allowance of attorney's fees in such case under the penalty statute constitutes a denial of due process and equal protection by the laws of Florida.

That the plaintiff had sustained serious and very painful injuries which "wholly and presumably permanently disabled" him the evidence sufficiently establishes. That such injuries continued until July 25, 1932, when he was discharged from the government hospital at Washington is also

sufficiently established. The defendant continued after that date for a period of four months to pay the disability benefits, when it then stopped payments.

During that period of four months there was evidence from which the jury might have reasonably found that the plaintiff's physical condition had sufficiently improved to enable him to walk, transact a little business, drive an automobile, go swimming, and do light work.

Both legs of the plaintiff were injured. The right leg became serviceable and, according to the view of one physician or surgeon, would probably not be the cause of any further trouble, but the left leg is the "site of a non-union of the tibia" and of a chronic bone infection at the site of the injury. The view was expressed that the infection would have to be eradicated, requiring possibly several operations and months of time "after which the non-union will have to be overcome by additional bone graft, which may or may not be successful." It was said by one witness that an amputation of the leg would better the plaintiff's condition, or even a less severe treatment of "bone grafting" would probably improve his condition.

The disability clause of the policies provides that the disability benefit will be paid each month if the insured becomes "wholly and presumably permanently disabled."

The policy defines total disability to be such injury or disease as to prevent the insured "thereby from engaging in any occupation whatsoever for remuneration or profit." The policy also provides that disability shall be presumed to be permanent whenever the insured will presumably be so totally disabled for life, or after the insured has been so totally disabled for not less than three consecutive months immediately preceding receipt of proof thereof.

The phrase "wholly and presumably permanently disabled" means total disability, which the policy defines to be such injury or disease as will prevent one so affected "from engaging in any occupation whatsoever for remuneration or profit." As thus defined the phrase "wholly disabled" or "totally disabled" is not absolute in meaning, that is, free from qualification or restriction.

A person may be injured or diseased to such an extent as to prevent him from engaging in an occupation for remuneration or profit, but which would not prevent an occasional subsidiary employment or avocation.

The term "occupation" is itself a relative one, having relation to one's capabilities. A person whose occupation is that of merchant, or mechanic, or day laborer, who becomes "wholly disabled" from engaging in his ocupation, might nevertheless, after years of preparatory study and mental training follow some gainful occupation, but until that end is accomplished and the insured is receiving profits or remuneration from his new vocation the insurance company carrying the insurance for the injured person would not under a clause like the one included in the policies in this case be justified in refusing the monthly benefit payments on the possibility of the insured ultimately obtaining profits from following a different occupation from that which he was engaged in when the policy was written. Nor would it be justified in discontinuing the monthly disability payments so soon as the injured person recovered partially from his injuries enough to enable him to occasionally render some small service related or unrelated to his occupation.

The question, however, of the application of the disability clause in any case is under proper pleadings one of face and not of law. See Equitable Life Assurance Society of the U. S. v. Wiggins, 115 Fla. 136, 155 South. Rep. 527.

In the case of Cassens v. Metropolitan Life Ins. Co., 114 Fla. 659, 114 South. Rep. 522, this Court, speaking through Mr. Justice BUFORD, approved the rule announced in Metropolitan Life Insurance Co. v. Blue, 222 Ala. 665, 133 South. Rep. 707, 79 A. L. R. 852, that disability clauses in insurance policies, like the clause under consideration in this case, are construed as affording a reasonable time to ascertain whether the disability is "total and permanent" and to keep open the question if after events disclose that it was not in fact permanent but only reasonably appeared so to be. See also Stossel v. Gulf Life Ins. Co., decided January 7, 1935.

The policies in this case each contain what is known as a "Recovery from Disability Clause," under which the company may from time to time demand proof of the continuance of total disability, but not oftener than once a year after it has continued for two full years. It also provides that if at any time it shall appear to the company that the insured is able to engage in any occupation for remuneration or profit no further income payments shall be made nor premiums waived.

In the case of The Equitable Life Assurance Society of the U. S. v. McKeithan, decided March 25, 1925, this Court held that total disability as used in a policy of life insurance like those we are considering in this case does not mean a state of absolute helplessness. It means, said the court, "inability on the part of the insured to do substantially all of the material acts necessary to the insured's engaging in any occupation for remuneration or profit, taking into consideration his mental and physical capacities so to do if he so wished." The Court also said that "Under the language of the policies the presumption of permanence attaches to a proven total disability after it has existed con-

tinuously for at least four months. The insured is contractually entitled to the benefit of such presumption in aid of recovery until the insuror succeeds in overthrowing such presumption in the manner provided for under the heading 'Recovery from Disability.' "

The company in this case paid the disability income for one year and eleven months. Part of that period included four months after the injured man had been discharged from a hospital in Washington City. The company then concluded from the evidence which it obtained that the insured's total disability had ceased; that it was no longer bound by the policies to pay the monthly disability allowance and that the suspension of premium payments had ceased.

While the decision in the case by the jury upon the evidence submitted was against the company on the question of the insured's recovery from total disability, the attitude of the company was most reasonable. Its judgment, from the evidence submitted, could not be said to have been wholly without support. It was in no sense arbitrary, wilful or capricious. Its future liability in the circumstances under the disability clauses was a justiciable question which the company had a right under the Constitution and laws of the State to submit to the courts for adjudication.

The company's demand in the circumstances for the resumption by insured of premium payments cannot be said to be unreasonable, arbitrary or coercive. The insured would have in no wise prejudiced his position in law by refusal to pay the premium. His payment of the premium was therefore optional and voluntary. In such case the insured was not entitled to recover the insurance premium of forty-five dollars and forty-six cents, thus voluntarily paid by him to the company. See 21 R. C. L., p. 151, 142.

The reason for the rule is set forth in the above authority, and supported by numerous decisions, as follows:

"The reason of the rule that money voluntarily paid with full knowledge of the facts can never be recovered and its propriety are quite obvious when applied to a case of payment on a mere demand of money unaccompanied with any power or authority to enforce such demand, except by suit at law. In such case, if the party would resist an unjust demand, he must do so at the threshold. The parties treat with each other on equal terms, and if litigation is intended by the one of whom the money is demanded, it should precede payment. When the person making the payment can only be reached by a proceeding at law, he is bound to make his defense in the first instance, and he cannot postpone the litigation by paying the demand in silence and afterward suing to recover the amount paid. Otherwise, the privilege is left to him of selecting his own time and convenience for litigation, delaying it, as the case may be, until the evidence on which his adversary would have relied to sustain his claim may be lost by the lapse of time and the many casualties to which human affairs are exposed."

The case of Galusha v. Sherman, 105 Wis. 263, 81 N. W. Rep. 495, 47 L. R. A. 417, cited by counsel for defendant in error against the proposition does not in the view which we have of the conditions existing in this case support the right to recover the premium paid. That case presented one of duress. The court pointed out the unnaturalness of the occurrence of giving the note and mortgage in all the circumstances except as explained by mental weakness on the part of the mortgagor and fear of punishment as a criminal if he did not settle the claim made upon him. The court pointed out that the circumstances indicated that the mortgagor, who sought to set aside the instrument on the ground

of duress, was threatened with arrest and imprisonment which produced in his mind a conviction that such would be the result of a refusal to speedily settle the claim and he was thereby rendered incapable of exercising his judgment in respect of complying or refusing to comply with the demand made upon him.

No such situation can reasonably be said to have existed in this case or that Lecks was in the slightest degree influenced in his judgment as to the consequences of a failure by him to pay the premium. See also Jefferson County v. Hawkins, 23 Fla. 223, 2 South. Rep. 362.

As to the recovery of attorney's fees in this case, Section 6220 C. G. L., 1927, provides for the recovery of attorney's fees in favor of the beneficiary under any policy of insurance. The amount to be recovered is required to be a reasonable sum as fees or compensation for the attorneys or solicitors of the insured and the amount to be recovered shall be ascertained by the court in chancery cases or by a jury in common law actions.

The Act has been held to be constitutional. See Tillis v. Liverpool & L. & G. Ins. Co., 46 Fla. 268, 35 South. Rep. 171; Hartford Fire Ins. Co. v. Redding, 47 Fla. 228, 37 South. Rep. 62; L'Engle v. Scottish Union & National Fire Ins. Co., 48 Fla. 82, 37 South. Rep. 462; Supreme Lodge K. P. v. Lipscomb, 50 Fla. 406, 39 South. Rep. 637; U. S. Fire Ins. Co. v. Dickenson, 82 Fla. 442, 90 South. Rep. 613.

In the latter case it was held that fees provided for are in the nature of a penalty, although not such strictly speaking. It was said in that case that such statutes "are sustained under the doctrine that attorney's fees may be imposed upon the delinquent insurance company under the police power of the state as a kind of penalty incurred in the conduct of a business affected with a public interest." In that

case it was pointed out that the statute provides in every case where an insurance company unsuccessfully defends an action against it upon a policy it is liable for attorney's fees, whether the defense is one of law as to the company's liability under the policy or one of fact as to the amount of damages.

Counsel for plaintiff in error do not contend that the statute is *ipso facto* unconstitutional, but it is contended that the application of the statute to the case at bar, due principally to the facts in evidence, is unconstitutional and constitutes a violation of the equal protection and due process clauses as set forth in the Declaration of Rights.

The amount which the plaintiff was entitled to recover in this case was $185.93. The amount of attorneys' fees allowed was $212.50, more than twenty-six dollars greater than the amount which the plaintiff was entitled to recover on the disputed liability.

In this case there was no question of law as to the company's liability under the policy assuming that the total disability of the insured had not ceased; that is to say, assuming that he had not recovered from his injuries to the extent that he was able to engage in any occupation for remuneration or profit. There was only a question of fact. The burden was upon the Company to establish the insured's recovery to the degree of ability enabling him to engage in an occupation for profit or remuneration. The issue was tendered by the company in good faith. The evidence submitted reasonably warranted the contest.

To impose an attorney's fee against the company in such case in an amount so large in proportion to the demand as the sum allowed in this case is to give the allowance more of the character of penalty than that of a statutory liability incurred for an unsuccessful defense upon an insurance ob-

ligation. The purpose of the statute was to secure the element of reasonableness in the allowance of attorney's fees. That purpose would be defeated if the action which involved a small sum and a simple issue of fact could be magnified by unnecessary proceedings to create an apparent justification for a large fee. The defendant had a right to fully investigate and test the legality and justness of the plaintiff's claim. To impose a heavy penalty upon the defendant for doing that; a penalty disproportionate to the amount of the claim and the extent of the investigation necessary is to eliminate the element of fair play or righteous judgment.

That principle is recognized in A. C. L. Ry. Co. v. Wilson & Toomer Fertilizer Co., 89 Fla. 224, 104 South. Rep. 593.

We are of the opinion, in view of a study of the nature of the claim and the extent of investigation necessary and the evidence offered by defendant in justification of its course, that an allowance of an attorney's fee greater than one hundred dollars was not justified as a reasonable fee.

If a remittitur is entered by the plaintiff to an amount of one hundred and fifty-seven dollars and sixteen cents within ten days after the mandate from this Court has issued, the judgment will stand affirmed; otherwise it shall stand reversed.

TERRELL and BUFORD, J. J., concur.

WHITFIELD, C. J., and BROWN and DAVIS, J. J., concur in the opinion and judgment.

### On Rehearing

WHITFIELD, C. J.—The statute provides that "upon the rendition of a judgment or decree by any of the courts of this State * * * in favor of the beneficiary * * * under any policy or contract of insurance * * * there shall be adjudged or decreed * * * in favor of the beneficiary * * * a reason-

able sum as fees or compensation for his or her or their attorneys or solicitors prosecuting the suit in which the recovery is had. The amount to be recovered * * * shall be included in the judgment or decree rendered in such cause." Section 6220 (4263) C. G. L. The statute is constitutional. Tillis v. Liverpool & London & Globe Insurance Co., 46 Fla. 268, 35 So. 171; Hartford Fire Insurance Co. v. Redding, 47 Fla. 228, 37 So. 62; L'Engle v. Scottish Union & National Fire Insurance Co., 48 Fla. 82, 37 So. 462; United States Fire Insurance Co. v. Dickerson, 82 Fla. 442, 90 So. 613; Harris v. United States, 51 F. (2d) 382.

A reasonable attorney fee to be adjudged in this case is indicated in the original opinion herein. Its recovery is a statutory right of the beneficiary and the principles relating to the recovery of unjust penalties announced in Atlantic Coast Line R. Co. v. Wilson & Toomer Fertilizer Co., 89 Fla. 224, 104 So. 593 and Atlantic Coast Line R. Co. v. Connell & Schultz, 111 Fla. 572, 149 So. 596, 151 So. 381, do notsupersede the affirmative statutory right of the beneficiary to recover reasonable attorney fees even though payment under the policy was contested in good faith and upon reasonable grounds.

The judgment entered in this cause by this court on April 27, 1935, is hereby ordered to stand as the judgment of this court.

It is so ordered.

ELLIS, BROWN, BUFORD and DAVIS, J. J., concur.

TERRELL, J., dissents.

DAVIS, J. (concurring with Judge Whitfield).—Upon reconsideration of this case in the light of the petition for a rehearing filed herein challenging the allowance to plaintiff below of an attorney's fee in accordance with Section 4265 R. G. S., 6220 C. G. L., which statute the petitioner for re-

hearing contends is unconstitutional as an attempted unlawful statutory deprivation of the insurance company's property without due process of law if it should be applied to a case wherein the insurance company, as in this case, resisted payment in good faith and upon reasonable grounds, it seems to me that the original judgment should be adhered to upon rehearing, upon the authority of a recent decision by the Supreme Court of the United States settling this precise point (opinion filed March 4, 1934) in the case of Life & Casualty Co. of Tennessee v. McCray, 291 U. S. 566, S. Ct. 482, 78 L. Ed. 987, wherein that Court held (1st headnote) :

"A state statute by which a life insurance company, if it fail to pay upon demand the amount due under a policy after death of the insured, is made liable in addition for fixed damages, reasonable in amount, and for a reasonable attorney's fee for collection, to be taxed by the Court, is consistent with due process and equal protection clauses of the Fourteenth Amendment, *even though payment of the policy was resisted in good faith and upon reasonable grounds.*"   (Emphasis supplied.)

In Life & Casualty Co. of Tennessee v. McCray, *supra,* the Federal Supreme Court pointed out that the nature of the insurance business and the peculiar hardships commonly experienced by the beneficiary of an insurance policy when its payment does not follow promptly after a loss under it, justify the special statutory requirements imposed by our statutes in cases like the present, even where the insurance company admittedly acts in the utmost good faith in litigating a claim which it has every reasonable ground for believing should be denied payment unless judicially decreed otherwise.

Such considerations set this case apart from the doctrine

announced in Atlantic Coast Line R. Co. v. Wilson & Toomer Fertilizer Co., 89 Fla. 224, 104 Sou. Rep. 593; Atlantic Coast Line R. Co. v. Farris & Co., 111 Fla. 412, 149 Sou. Rep. 561; Atlantic Coast Line R. Co. v. Connell & Schultz, 111 Fla. 572, 149 Sou. Rep. 596, 151 Sou. Rep. 381, which is in nowise required to be abandoned as to litigants affected by the rule declared in such cases.

ELLIS and BROWN, J. J., concur.