The Pacific Mutual Life Insurance Company of California v. John J. McCaskill.

170 So. 579.

Division A.

Opinion Filed October 31, 1936.

*Doggett, McCollum, Howell & Doggett,* for Plaintiff in Error;

*Carter & Pierce, Philip D. Beall* and *William McChesney,* for Defendant in Error.

BROWN, J.—Two cases are involved here. By stipulation both cases were tried simultaneously, the pleadings and evidence being the same except for some' slight differences in the dates of the policies and amounts claimed thereunder. A separate verdict and judgment was rendered in each case. This court, upon motion of counsel for plaintiff in error, ordered that the transcript of record filed under the first writ of error should serve as the transcript of record in the second writ of error, and that the second cause should be heard by the court at the same time and that one brief by each party should be sufficient for both of said causes. Upon the trial in the court below, the record shows that the two cases were referred to as the "first case" and the "second case." We will here only discuss the first case as a decision in that case will obviously be controlling in the second case.

This first writ of error is from a final judgment rendered in the court below in favor of the plaintiff, defendant in error here on Feb. 5, 1935, in the sum of $1,299.29 damages, also $250.00 attorney's fees, and a further sum to cover the costs.

From the allegations of the amended declaration upon which the case was tried it appears that on February 14, 1922, the plaintiff, John J. McCaskill, took out a twenty-payment life insurance policy with the defendant company. The consideration for the policy was the payment in advance of the first annual premium of $732.50 and the agreement to pay a like premium annually for twenty years or until the prior death of the plaintiff during that period.

The policy among other things provided that:

"Should the Insured, before attaining the age of sixty years and while this Policy is in full force and no premium thereon in default, become so disabled as to be totally and permanently unable to perform any work or engage in any occupation or profession for wages, compensation or profit, or suffer the irrevocable loss of the entire sight of both eyes, or the use of both hands or feet, or one hand and one foot, the Company will waive the payment of future premiums and pay the Insured One Hundred Fifty Dollars immediately on receipt of due proof of such disability or loss and a like sum on the first day of each month thereafter as long as the Insured shall live, and such waiver of premiums and payments to the Insured shall not affect any other benefits or values granted under the conditions of the policy, provided, however, as follows:

"Should the Insured at any time thereafter, when required by the Company (such requirement, however, not to be exacted more frequently than once a year), be unable to furnish due proof of the continuance of his right to the foregoing benefits, the company will discontinue the same and require the payment of any premium which may thereafter become due under the conditions of the policy, but no reimbursement shall be required for any premiums waived or monthly payments made."

Thereafter, in March, 1933, the plaintiff, then being fifty years of age and no premium on the policy being in default, was afflicted with the disease arthritis and diabetes, from the effects of which diseases, so it is alleged, the plaintiff then became and at all times since has been so disabled as to be totally and permanently unable to perform any work or engage in any occupation or profession for wages, compensation or profit. Due proof of such disability was furnished the defendant company before default in the payment of any premium under the policy. The defendant received and accepted such proof and paid the plaintiff the permanent disability benefits provided for in said policy until and including the installment due June 1, 1934. On July 23, 1934, the defendant company without calling on plaintiff for due proof of the continuance of his right to said disability benefits, discontinued payment thereof and notified the plaintiff that it would not make further payments to plaintiff of such benefits. Up to the time the suit was filed the defendant had failed to pay the plaintiff the monthly installments due under the policy of $150.00 per month, said installments so unpaid having fallen due on July 1, and August 1, 1934. It is alleged that the plaintiff had been compelled to employ attorneys to bring this suit for the collection of said sums of money and that the defendant had thereby become liable to pay the plaintiff, in addition to the aforesaid amount, a reasonable fee for the services of his attorneys.

The second count of the declaration is based upon a similar life insurance policy containing similar provisions for permanent total disability benefits, which policy was issued July 13, 1923, and called for the payment of premiums in the sum of $655.50 per annum for twenty years. The unpaid disability benefits claimed under that count were

$100.00 falling due July 1, 1934, and a like amount falling due on August 1, 1934. The policy sued on in this second count provided that the amount of the premiums to be waived in accordance with the provisions of the permanent total disability benefits under the policy should be $329.00 annually. In other respects the provisions of this policy are similar to those sued on in the first count, and the facts alleged in connection therewith are likewise substantially the same. It is alleged in this count that the defendant company after having paid the disability benefits from March, 1933, down to and including June 1, 1934, notified the plaintiff that they would not make any further payments of said disability benefits and demanded that plaintiff pay the quarterly annual premium which matured under said policy on July 13, 1934, and refused to waive any of said premium, notifying plaintiff that policy would lapse if said premium was not paid, which quarterly annual premium, amounting to $173.40, plaintiff paid under protest. Under the provisions of the policy plaintiff had agreed to waive $82.25 of said premium which sum the plaintiff claims that he is entitled to recover in this suit.

The third count is substantially the same in its averments as the second count, being based upon a third policy issued by the defendant to the plaintiff on July 14, 1922, in consideration of an annual premium of $616.25. This count claims two disability benefits of $250.00 each, falling due July 1 and August 1, 1934, which the defendant had declined to pay.

It is alleged in this third count that under the provisions of the policy the defendant agreed to waive further premiums if the plaintiff became entitled to permanent disability benefits, but that the defendant demanded that the plaintiff pay the quarterly annual premium which became

due on July 14, 1934, and refused to waive said premium, and notified plaintiff that said policy would lapse if said premium was not paid, which quarterly annual payment, amounting to $163.75, the plaintiff paid under protest, which premium the plaintiff seeks to recover in this suit.

The fourth count was a common count for $246.00, money had and received by defendant for use of plaintiff, and the bill of particulars shows that the amount thus sought to be recovered consisted of the amount of premiums paid by plaintiff under protest, as set out in the second and third counts. Plaintiff demurred to the said declaration as amended, filed motion for compulsory amendment thereof, and motion to strike bill of particulars, which were all overruled by the court.

The defendant filed a plea that it never was indebted, as alleged, to the fourth count, and to each of the other counts it filed pleas denying that the plaintiff was totally and permanently disabled as alleged, and a further plea to so much of each of said counts as claimed a return of the premiums in which the defendant alleged that each of said premiums was paid by the plaintiff freely and voluntarily with full knowledge on his part of all the facts stated in his declaration, and without any duress on the part of the defendant. The defendant also filed an additional plea to so much of each count of the declaration as claimed attorneys' fees, alleging that the defendant had declined the payment of the moneys claimed by said declaration in good faith, verily believing that under the facts attending and surrounding the plaintiff's said claim the defendant was not liable to the plaintiff in any amount.

To this additional plea the plaintiff demurred upon several grounds, which demurrer was sustained by the court. Plaintiff joined issue upon the remaining pleas and on the

issues as thus made up the case was tried before a jury which resulted in a verdict for the plaintiff, upon which verdict the judgment hereinabove referred to was rendered. Motion for new trial was overruled and the defendant took this writ of error.

The case was ably briefed and argued by counsel for both sides of this controversy, and from which it appears that the plaintiff in error is contending for a reversal mainly upon the following grounds: (1) that the insured was not entitled to recover back the amount of the premiums paid, as they were voluntary payments not made under duress, or compulsion: (2) that the insured was not entitled to recover attorneys' fees under Section 6220 C. G. L., because the claims of the insured were contested in good faith, there being a reasonable doubt as to the legality and justness of insured's alleged total and permanent disability, which only a full investigation, with all the facts in dispute put before the tribunal, could determine; and (3) that the insured had failed to prove, by a preponderance of the evidence, that he was totally and permanently unable to perform any work or engage in any occupation or profession for wages, compensation or profit, and that the evidence adduced was insufficient, as a matter of law, to prove such total and permanent disability, as to which issue the burden of proof was upon the plaintiff.

Taking up these contentions in their reverse order, a careful reading of the record in this case convinces us that the issue made between the parties on this question of total and permanent disability as defined in the policy was properly submitted to the jury, and that the trial court committed no error in denying the motion for new trial. The evidence is quite voluminous and no good purpose would be served by summarizing or analyzing it in this opinion. We are

convinced that it was sufficient to sustain the verdict. See Equitable Life Assurance Soc. v. McKeithan, 119 Fla. 486, 160 So. 883, and cases cited. The preponderance of the evidence tended to prove that the plaintiff had been afflicted for several years with an incurable and painful type of arthritis, progressive in its nature, which in the opinion of several reputable physicians had produced distressing effects upon his nervous system and unfitted him for active work of any kind. It appears that there is no remedy yet known for this type of arthritis, and no alleviation but rest, nourishment and sunshine. The evidence also showed that plaintiff was a victim of diabetes, another incurable disease, but that so far as that affliction of itself was concerned, it had not and would not render him unable to work 'so long as he took appropriate daily injections of insulin and used a proper diet. While there was some conflict in the testimony of the medical witnesses introduced by the plaintiff and those introduced by the defendant, the weight of such evidence preponderated in favor of the defendant in error's contention as set forth in his declaration. We would not be authorized to hold the trial court in error for refusing to disturb the jury's verdict in respect to this vital question of the plaintiff's total disability as defined in the policies.

Plaintiff in error's contention with reference to the matter of attorney's fees is disposed of by the holding of this court in the case of New York Life Insurance Co. v. Lecks, 122 Fla. 127, 165 So. 50, which case was handed down by this court after the trial of the instant case in the court below. We there held that Section 6220 C. G. L., authorizing the recovery of reasonable attorney's fees by a beneficiary recovering on an insurance policy, was constitutional and did not deny due process nor equal protection of the laws as applied to an action for a disability benefit under

a life policy, even though the insurer's contention that total disability had ceased was made in good faith and on reasonable grounds.

The only question of any difficulty in this case is that concerning the plaintiff's right to recover premiums paid under protest.

The second and third counts of the declaration each contain an allegation that the defendant "notified plaintiff that said policy would lapse if said premiums were not paid" and that plaintiff paid the premiums under protest. The notice from the defendant to the plaintiff introduced in evidence states the effect of failure to pay the premium, which was that "the policy and all payments thereon would become forfeited and void except as to the right of a surrender value, extended term or paid up insurance, or as otherwise provided for in said policy or by statute." Largely for this reason, the defendant in error contends that the payment of these premiums was involuntary, and that they are therefore recoverable.

The general rule is that money voluntarily paid under a claim of right to the payment, and with knowledge of the facts by the person making the payment, cannot be recovered back on the ground that the claim was illegal, or that there was no liability to pay in the first instance. 21 R. C. L. 141.

This general rule, together with its qualifications, has long been recognized by this court. Thus in the case of Jefferson County v. Hawkins, 23 Fla. 223, 2 So. 362, this court said:

"It has been held that 'money voluntarily paid upon claim of right, with full knowledge of all the facts, cannot be recovered back merely because the party at the time of payment was ignorant or mistook the law as to his liability.'"

"The illegality of the demand paid constitutes of itself no ground for relief, but there must be in addition some compulsion or coercion attending its assertion which controls the conduct of the party making the payment. To constitute such compulsion or coercion as will render payment involuntary, there must be some actual or threatened exercise of power possessed or supposed to be possessed by the party exacting or receiving the payment over the person or property of the party making the payment, from which the latter has no other means of immediate relief than by advancing the money. The fact that a party pays money under protest does not change the character of the transaction or enable him to recover it back, unless the payment was under duress or coercion, or when undue advantage is taken of his situation. The object of a protest in such case is to take from the payment its voluntary character, and thus preserve to the party a right of action to recover back the money. But where no such compulsion exists or no advantage is taken there is no case of its interposition. If the payment is in truth voluntary no language used on the occasion can change its character."

It is well settled that illegal payments involuntarily made may be recovered, provided the compulsion furnishes the motive for the payment sought to be recovered and proceeds from the person against whom the action is brought. In 21 R. C. L., page 145, the following pertinent observations occur in the text: ·

"What shall constitute the compulsion or coercion which the law will recognize as sufficient to render (a payment), involuntary is often a question of difficulty. From the nature of the question no very precise rules can be laid down. The very word used to describe an involuntary payment imports a payment made against the will of the person

who pays. It implies that there is some fact or circumstance which overcomes the will and imposes a necessity of payment in order to escape further ills. Ordinarily it may be said duress is that degree of constraint or danger either actually inflicted or threatened and impending, sufficient to overcome the mind and will of a person of ordinary firmness. A rule that has been frequently applied is that to constitute the coercion or duress which will be regarded as sufficient to make a payment involuntary, there must be some actual or threatened exercise of power possessed, or believed to be possessed, by the party exacting or receiving the payment over the person or property of another, for which the latter has no other means of immediate relief than by making the payment. Beyond these and similar statements of general principles, the courts have not attempted to lay down any definite and exact rule of universal application by which to determine whether a payment is voluntary or involuntary. From the very nature of the subject, this cannot be done, as each case must depend somewhat upon its own peculiar facts. The real and ultimate fact to be determined in every case is whether or not the party really had a choice, and the determination of that question is for the jury."

Plaintiff in error cites several cases in support of the contention that these premium payments cannot be recovered, among them Jones v. Providence, Etc., Assur. Soc., 147 N. C. 540, 61 S. E. 388, 25 L. R. A. (N. S.) 803; Rosenfeld v. Boston, Etc., Inc. Co., 222 Mass. 284, 110 N. E. 304, and Aetna Life Insurance Co. v. Thomas, 144 So. 50 (Miss.); Featherstone v. Stonewall Life Insurance Co. (Miss.), 147 So. 306; but contends that the question is clearly settled in plaintiff in error's favor by our own opinion and decision in the case of New York Life Insurance

Co. v. Lecks, *supra*. *Per contra,* defendant in error cites fully as many cases in support of his position.

In the opinion of Mr. Presiding Justice ELLIS in the Lecks case, *supra,* it appears that the policy contained a provision waiving the payment of premiums if the insured became wholly and permanently disabled before he became sixty years of age, and the learned Justice had this to say in regard to the right of the insured to recover a certain premium payment under the facts of that case:

"The company in this case paid the disability income for one year and eleven months. Part of that period included four months after the injured man had been discharged from a hospital in Washington City. The company then concluded from the evidence which it obtained that the insured's total disability had ceased; that it was no longer bound by the policies to pay the monthly disability allowance and that the suspension of premium payments had ceased.

"While the decision in the case by the jury upon the evidence submitted was against the company on the question of the insured's recovery from total disability, the attitude of the company was most reasonable. Its judgment, from the evidence submitted, could not be said to have been wholly without support. It was in no sense arbitrary, willful or capricious. Its future liability in the circumstances under the disability clause was a justifiable question which the company had a right under the Constitution and laws of the State to submit to the courts for adjudication.

"The company's demand in the circumstances for the resumption by insured of premium payments cannot be said to be unreasonable, arbitrary or coercive. The insured would have in nowise prejudiced his position in law by re-

fusal to pay the premium. His payment of the premium was therefore optional and voluntary. In such case the insured was not entitled to recover the insurance premium of forty-five dollars and forty-six cents, thus voluntarily paid by him to the company. See 21 R. C. L., p. 151, 142. The reason for the rule is set forth in the above authority, and supported by numerous decisions, as follows:

" 'The reason of the rule that money voluntarily paid with full knowledge of the facts can never be recovered and its propriety are quite obvious when applied to a case of payment on a mere demand of money unaccompanied with any power or authority to enforce such demand, except by suit at law. In such case, if the party would resist an unjust demand, he must do so at the threshold. The parties treat with each other on equal terms, and if litigation is intended by the one of whom the money is demanded, it should precede payment. When the person making the payment can only be reached by a proceeding at law, he is bound to make his defense in the first instance, and he cannot postpone the litigation by paying the demand in silence and afterward suing to recover the amount paid. Otherwise, the privilege is left to him of selecting his own time and convenience for litigation delaying it, as the case may be, until the evidence on which his adversary would have relief to sustain his claim may be lost by the lapse of time and the many casualties to which human affairs are exposed.' "

The defendant in error earnestly contends that where the insured in a life insurance contract submits proof of total and permanent disability and the policy provides for a waiver of premiums during the period of total and permanent disability, and the insurance company pays monthly benefits for a time, and then without giving the insured an

opportunity to "furnish due proof of the continuance of his right to the foregoing benefits," as required by the policy, discontinues the payments of the benefits and refuses to waive the premiums and demands payment of the premiums and threatens to forfeit the insurance policy if the premiums are not paid, and the insured establishes his total and permanent disability, the payments of the premiums under such circumstances are involuntary and are recoverable.

Probably the strongest case cited by defendant in error in support of his position on this question is Still v. Equitable Life Assurance Society, 165 Tenn. 224, 54 S. W. (2nd) 947, 86 A. L. R. 382, with note at page 388 reviewing most of the cases on this subject. In this case suit was brought to recover monthly disability benefits and also the amount of two premiums paid during the period of disability after proof of such disability had been furnished. It being alleged that the complainant was forced to pay in order to prevent defendant from declaring a forfeiture of the policy. After suit was filed the monthly benefits were paid by the company and the remaining question was whether or not the premiums could be recovered. The company claimed that they were voluntary payments and made with full knowledge of the facts. The court held that they were involuntary payments and could be recovered. After finding that the parties were each acting in good faith, the plaintiff in claiming that his disability was total and permanent and the defendant in asserting the contrary, under which circumstances the defendant declined to waive the premiums and the plaintiff paid them, the court, after discussing the case of Johnson v. Ford, 147 Tenn. 62, 245 S. W. 531, said:

"In the case now before us the elements of fraud and bad faith on the part of the defendant, present and em-

phasized in Johnson v. Ford, are absent. However, if in fact the complainant had suffered total and permanent disability, and had furnished defendant with 'due proofs' thereof in September, 1930, the defendant's refusal to waive the premium payments due in 1931 and 1932 was a breach of its contract and was therefore wrongful. And by this wrongful act the complainant was confronted with the alternative of paying the premiums when due, or by not doing so, assuming the risk of losing his right to continue his insurance in force until its maturity at his death, if he should be unsuccessful in proving his disability to be both total and permanent. That this was a real hazard, with the outcome uncertain, is inherently obvious in the nature of the issue in controversy. The defendant, after months of investigation, had declined to recognize liability, first in January, 1931, and again in January, 1932, and the question of the totality and permanency of the disability was one to be determined upon probabilities, not capable of ascertainment with exact certainty. This uncertainty, created by defendant's refusal to concede the disability and waive the premiums, was the compulsion which prompted and impelled the complainant to pay the two premiums, rather than risk his right to continue the insurance on the waiver contracted for."

After citing and discussing a number of cases the Tennessee Court said:

"We are strongly inclined to the view that, under the facts and circumstances of this case as herein set out, a person of ordinary business sense and prudence would have weighed the consequences with the same result as did the complainant. The compulsion under which the payments were made is apparent to any one who appreciates the value of a life insurance contract. The complainant was so sit-

uated that, if he failed, to establish the permanency of his disability, he could not hope to obtain other insurance. Decision could not be postponed and time was of the essence of the matter. The payments were necessary to preserve valuable rights, and, under the authorities cited, we hold they were not voluntary. This holding is, we think, in accord with the rules of law and equity."

We think the same conclusion might well be reached in this case, especially in view of the provisions of the policy above mentioned, which were life insurance policies. The Insurance Company in this case, stopped the payments of benefits and demanded the payment of premiums and threatened the forfeiture of the policies if the premiums were not paid without first complying with that provision of the insurance contract which required them to give the insured an opportunity to furnish due proof of his right to the continuance of the benefits before taking such drastic action. This provision alone, aside from some other features of the case, distinguishes this case from New York Life Insurance Co. v. Lecks, *supra.*.

It must be remembered in this connection that here the power to refuse the demand for payment of premiums is not by suit at law, where the insurer can defend against the demand, but the demand is accompanied by the power to declare the life insurance policy lapsed or forfeited if the insured does not pay and is unsuccessful in establishing his right to the waiver. The parties do not treat with each other on equal terms. If the insured refuses to pay the premium and is unsuccessful in establishing his right to waiver of premium, he loses not the money demanded in the form of premiums, but he loses his life insurance policy. When, as stated in the Lecks case, the person making the payment can only be reached by a pro-

ceeding at law, he is bound to make his defense in the first instance, but the situation here does not present a case where the person making the payment can only be reached by a proceeding at law, for generally no suit at law is brought to enforce payments of life insurance premiums and the insured is not given an opportunity to present his defense to the demand for payment in a proceeding at law. Furthermore, when the insured pays the premiums under protest, and immediately or shortly thereafter sues to recover them, the insurance company is not injured or embarrassed by the lapse of time, or the damage of losing the evidence upon which it relies to sustain its claims for the payment of premiums. The compulsion that prompts the payment of premiums in·such a case as the one before us is the fact that the right to waiver depends upon a disputed question of fact, which, if determined against the insured would result, if he did not pay the premiums, in the loss of a valuable property right contingent upon such payment, that is the continuance in full force of his life insurance policy. For the reasons above pointed out, we hold that the recovery of the premiums paid under protest, under the circumstances alleged in the declaration and proven by the evidence, was authorized and that the rulings of the trial court in that connection are free from reversible error.

It is contended by plaintiff in error that the evidence adduced (largely by cross-examination of the plaintiff) shows that plaintiff's own indiscretions and failure to follow a proper diet were responsible for or aggravated his condition, and that he had estopped himself from claiming the benefits provided for in the policies. The evidence adduced on this point was not very convincing, to say the least. On the other hand, there was abundant evidence, uncontradicted, tending strongly to show that the plaintiff, from the

beginning of his physical troubles back in 1932, down to the time of the trial, had been to many places in this and other countries and had consulted and received treatment from many prominent physicians, and had made an earnest and determined effort to better his condition and to prevent if possible the further progress of the disease from which he suffered, and that he did not quit working until told by his physicians that he had to do so. The jury had all this evidence before them, and although McCaskill looked very well, and could walk short distances with the aid of a cane, and occasionally drove his car a few blocks from his home to town, and the jury had no evidence of his sufferings but that of himself, corroborated by his physicians, they saw fit to believe him, and resolved any doubts in this regard in favor of the plaintiff. Pain, after all, is subjective. You cannot see it. The credibility of witnesses is for the jury, and we would not be warranted in disturbing their verdict on this score.

The reasonableness of the amount of attorney's fees allowed by the verdict and judgment was also amply sustained by the testimony.

We have not overlooked the contention of the plaintiff in error that the allegation that it had not complied with the terms of the policies in regard to discontinuance of payment of benefits and resuming the requirement of premium payments, was not sustained by the evidence. The declaration alleged that the Company took this action without calling on plaintiff for "due proof of the continuance of his right" to said disability benefits, as required by the policy.

There was evidence tending to prove this allegation. True it is that plaintiff went to Atlanta at the Company's request and submitted to an examination by physicians whose services were engaged by the Company, and it was immediately

after this that the payment of disability benefits ceased and demand was made for the resumption of premium payments. As we see it, this was not a compliance with said requirement of the contract, which is quoted in full in the first few paragraphs of this opinion. The purport of that clause of the contract, as we understand it, required that the insured should himself be given an opportunity to furnish due proof of the continuance of his right to benefits, which right had previously been recognized by the insurer, before such benefits should be discontinued and premium payments again required. Yet we do not question the good faith of the Company, as the testimony of these physicians, who made this examination for the Company, as adduced on the trial of this case, especially one of them, was calculated to make the Company's officials seriously doubt the existence of the total disability which they had previously recognized. But the insured had the right to be given the opportunity to furnish "due proof" on that point himself before the Company discontinued the payment of the disability benefits.

For the reasons above pointed out, we find no error in the record which would warrant a reversal, and the judgment in the case designated in the transcript as the "first case" will accordingly be affirmed. A similar order will be entered respecting the judgment in the "second case."

Affirmed.

WHITFIELD, C. J., and DAVIS, J., concur.

ELLIS, P. J., and TERRELL and BUFORD, J. J., concur in the opinion and judgment.