**Bruce ADELBERG, Plaintiff–Appellee,**

v.

**BERKSHIRE LIFE INSURANCE COMPANY, Defendant–Appellant.**

No. 95–4283.

United States Court of Appeals, Eleventh Circuit.

Oct. 10, 1996.

Jay S. Blumenkopf, Kenneth Strick, Joseph M. Ramirez, Eckert, Seamans, Cherin & Mellott, Pittsburgh, PA, for appellant.

Andrew Grigsby, Hinshaw & Culbertson, Miami, FL, for appellee.

Before TJOFLAT, Circuit Judge, and RONEY and PHILLIPS *, Senior Circuit Judges.

PER CURIAM:

This case involves an unanswered question of Florida law that is determinative of this

---

* Honorable J. Dickson Phillips, Jr., Senior U.S. Circuit Judge for the Fourth Circuit, sitting by designation.

appeal. We therefore certify the question to the highest court of Florida for resolution.

The relevant facts are undisputed. The appellant, Berkshire Life Insurance Company, insured the appellee, Bruce Adelberg, under an occupational disability insurance policy.[1] Under this policy, Adelberg was entitled to benefits for "total disability" if he was unable to perform the "material and substantial duties" of [his] occupation.[2] The policy did not expressly define the term "occupation." While the policy was in effect, Adelberg worked as a jeweler, a food commodity salesman, and a yacht salesman (which was his occupation at the time of the injury giving rise to this case), but Berkshire always considered Adelberg's occupation to be that of "salesman."

Beginning in 1986, Adelberg worked full time as a licensed yacht salesman for Colonial Yacht Sales. As a yacht salesman, Adelberg's duties included showing yachts to customers and acquiring an in-depth knowledge of the yachts' interiors by walking and crawling through them.[3]

In February of 1990, Adelberg injured his knee when he fell en route to a boat show; he sought medical treatment in April of 1990. From July 17 to October 1, 1990, Berkshire paid Adelberg disability benefits totalling $3300.[4] On October 1, Adelberg returned to work as a yacht salesman and his benefits were terminated. Later that month, after climbing up and down yachts for several days, Adelberg's knee swelled to the point where he could no longer walk and on November 7, 1990, he notified Berkshire of the aggravation of his earlier injury. At that time, Adelberg informed Berkshire that he was "totally disabled." Adelberg's orthopedic surgeon corroborated Adelberg's claim during a deposition, stating, "It's my opinion that [Adelberg] was definitely disabled from doing the duties of a yacht salesman."

Three months later, Adelberg obtained employment as a freight space salesman for a trucking company. Because Adelberg's new job required client contact, he spent a great deal of time walking and traveling. He initially worked only on commission, but later began receiving a salary.

Although Adelberg obtained a sales position with the trucking company, he maintained his disability claim with Berkshire because of his inability to perform the duties of a yacht salesman. Berkshire denied Adelberg's claim on the basis that he was not totally disabled from his occupation as a salesman, as evidenced by his new job. Berkshire has paid no benefits to Adelberg since October 1, 1990.

On February 12, 1991, Adelberg filed a complaint against Berkshire in the Dade County circuit court. Berkshire removed the action to the United States District Court for the Southern District of Florida.[5] On March 13, 1992, Adelberg moved for partial summary judgment, arguing that his occupation, for purposes of recovery, was that of a "yacht salesman" and that he was totally disabled as to that occupation. The district court denied this motion and the case was set for a jury trial.

Prior to trial, the case was transferred to another district judge, who informed the parties that she disagreed with her predecessor's ruling on Adelberg's motion for summary judgment. The court ruled that Adelberg's occupation, for purposes of recovery, was that of a yacht salesman. Using

---

1. There are two types of disability insurance policies: general insurance policies, which provide coverage if the insured is unable to pursue any gainful occupation; and occupational insurance policies, which provide coverage if the insured is unable to pursue the particular occupation he was engaged in at the time of the injury.

2. The original policy defined "total disability" as "your inability to engage in your occupation." The policy language was updated in April of 1984 to define "total disability" as "your inability to perform the material and substantial duties of your occupation."

3. Florida law requires that a yacht salesman obtain a license, which entails meeting several specific requirements. *See* Fla.Stat. ch. 326.004 (1995).

4. Payments began in July rather than April because Adelberg gave Berkshire late notice of his claim.

5. Subject matter jurisdiction was based on diversity of citizenship, *see* 28 U.S.C. § 1332.

this definition of Adelberg's occupation, a jury found that Adelberg was entitled to compensation and awarded him $224,226.93.[6] Berkshire appeals the district court's conclusion that Adelberg's occupation was, as a matter of law, that of a yacht salesman. Specifically, Berkshire contends that, where "occupation" is undefined in a disability policy, it should not be limited to the particular job held by the insured at the time of injury, but should apply to any similar position of the same general character.

■ Under Florida law, which we must apply in this case, the interpretation of the provisions of an insurance contract is a matter of law to be decided by the court. *See Gas Kwick, Inc. v. United Pac. Ins. Co.*, 58 F.3d 1536, 1538–39 (11th Cir.1995). Once the court has defined the relevant policy terms, any questions involving the insured's ability to fulfill those terms is a question of fact for the jury. *See Sun Life Ins. Co. v. Evans*, 340 So.2d 957 (Fla. 3d Dist.Ct.App.1976).

■ Although there are numerous Florida Supreme Court and intermediate state appellate court decisions concerning the interpretation of insurance contracts, none provide a binding answer as to how "occupation" should be construed in an occupational disability insurance policy.[7] Because this appeal depends solely on a resolution of this question of Flroida law, we refrain from resolving the issue and certify the question to the highest court in Florida.

Accordingly, we certify the following question to the Supreme Court of Florida:

WHEN THE TERM "OCCUPATION," IS LEFT UNDEFINED IN AN OCCUPATIONAL DISABILITY INSURANCE POLICY, DOES THE TERM "OCCUPATION" REFER TO PRECISELY (AND ONLY) THE JOB HELD BY THE INSURED AT THE TIME OF THE INJURY, OR SHOULD IT BE INTERPRETED MORE GENERALLY TO INCLUDE ANY JOB REQUIRING SIMILAR SKILLS AND PRODUCING A COMPARABLE INCOME?

In certifying this question, we do not intend the particular phrasing of it to limit the court in its consideration of the problem posed by the case. In order to assist the court's consideration of the case, the entire record, along with the briefs of the parties, shall be transmitted to the court.

QUESTION CERTIFIED.

---

**6.** The amount of the judgment was based on the benefit sum of $3700 per month from December 27, 1990, to December 12, 1994 (the date of the verdict), and included prejudgment interest and rebated premiums.

**7.** The Florida Supreme Court defined the term "occupation" in a general insurance policy as "a relative one, having relation to one's capabilities," but it did so in order to show that the insured could not succeed in any occupation. *New York Life Ins. Co. v. Lecks*, 122 Fla. 127, 165 So. 50, 52 (1936).

In *Sun Life Ins. Co. v. Evans*, 340 So.2d 957 (Fla. 3d Dist.Ct.App.1976), the insured was the owner of an air conditioning duct installation business and did all the installation work himself. After a serious knee injury, the insured sought occupational disability benefits because he could act only in a supervisory capacity. Although the district court of appeal held that a court must look to the insured's occupation as a whole to determine if he can no longer perform his occupational duties, this opinion merely repeated the language found in Adelberg's policy that the insured must be unable to perform the "material and substantial duties" of his occupation to be entitled to "total disability" benefits. *Id.* at 958; *see also Lorber v. Aetna Life Ins. Co.*, 207 So.2d 305, 308–09 (Fla. 3d Dist.Ct.App. 1968).

Finally, another district court of appeal held in *Bill Bard Assocs., Inc. v. Totten*, 418 So.2d 418 (Fla. 1st Dist.Ct.App.1982), that a claimant who switched from being a traveling salesman to a computer salesman could not receive permanent partial disability benefits under a worker's compensation policy. But the court did not address the definition of "occupation;" instead, it focused its analysis on the claimant's earning capacity.