686 So.2d 653 (1996)
Jan HALL, Eugene C. Kiernan, et al., Appellants/Cross-Appellees
v.
HUMANA HOSPITAL DAYTONA BEACH, etc., et al., Appellees/Cross-Appellants.
No. 95-3283.
District Court of Appeal of Florida, Fifth District.
December 6, 1996.
Rehearing Denied January 15, 1997.
*655 Stephen A. Scott, Law Offices of Stephen A. Scott, Gainesville, and Herbert T. Schwartz, Law Offices of Charles H. Puckett, III, Houston, Texas, for Appellants/Cross-Appellees.
Edward M. Waller, Jr., George A. Vaka, Charles Wachter, Elizabeth A. Boland, of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, for Appellees/Cross-Appellants.
GRIFFIN, Judge.
This is the appeal of a partial summary final judgment entered in favor of Humana Hospital Daytona Beach ["Humana"], now operating as Galen of Florida, Inc. The judgment concerns two counts of a class action suit brought by Humana's former patients seeking recovery of alleged overcharges for pharmaceuticals, medical supplies, and laboratory services. In essence, the suit is an attack on the practice whereby hospitals bill sums for items that are disproportionate to the market price of the items in a non-hospital setting. Examples are: a charge of $11.50 for a single Zantac tablet; a charge of $52 for a single tablet of Tylenol with codeine; and a charge of $20.50 for each Cipro tablet. We affirm.
All of the plaintiffs involved in the suit below are former patients of Humana. The class consists of "charge-based" "self payers", i.e., people who pay their hospital charges personally or through insurance. It does not include medicare or medicaid patients, indigent patients whose care is paid for by governmental entities or patients whose care has been paid for under the terms of a prospective payment arrangement which provides for the hospital to pay an amount other than the total of the itemized bill. Some of the members of the class have fully paid their bills, either directly or through insurance, some have partially paid their bills, and some have paid no portion of their bills. This appeal involves only those class plaintiffs, represented by Gayle Hoffman, who have fully paid their bills.[1]
The complaint sets forth that, upon admission to Humana, plaintiffs and/or their representatives were presented a standard form agreement to guarantee payment and were required to execute the agreement as a prerequisite to treatment. The complaint also asserts that each of the plaintiffs, in order to obtain treatment, did in fact sign one of two *656 standard form agreements presented by Humana. One of these forms obligated plaintiffs to pay the hospital's "prevailing rates," while the other required plaintiffs to pay the "rates set out in the Hospital's Master Charge List."[2] The Hospital's Master Charge List was a separate document which contained a statement of the hospital's then current charges.
The first of the two counts involved in this appeal is an action for money had and received. This count is based on a theory of imposition. It is alleged that Humana charged plaintiffs unreasonable amounts for pharmaceuticals, medical supplies, and laboratory services, despite an obligation to charge only a reasonable price for these items, and that Humana took "undue advantage of the class members' individual situations, virtual incarceration and lack of bargaining power" in imposing excessive charges. The count seeks a refund of such overpayments. The other count is an action for common law unjust enrichment, as well as unjust enrichment resulting from the hospital's alleged violation of section 395.015(6), Florida Statutes (1991).[3] In this count, it is alleged that Humana is limited by law to fair and reasonable amounts for challenged items, and that Humana overcharged the plaintiffs for these items in violation of its common law and statutory obligations.[4]
An action for money had and received, or the more modern action for unjust enrichment, see generally Moore Handley, Inc. v. Major Realty Corp., 340 So.2d 1238 (Fla. 4th DCA 1976), is an equitable remedy requiring proof that money had been paid due to fraud, misrepresentation, imposition, duress, undue influence, mistake, or as a result of some other grounds appropriate for intervention by a court of equity. Merritt v. Unkefer, 223 So.2d 723 (Fla.1969). The mere fact that an overpayment of some sort has been demanded and payment made will not support the action.
The basis alleged for equitable intervention in this case is "imposition." An action for imposition is an action for money had and received to recover "excess" payments coercively exacted from a plaintiff where only a reasonable compensation is allowable. See Cullen v. Seaboard Air Line Ry., 63 Fla. 122, 58 So. 182, 184 (1912); see also Southern States Power Co. v. Pittman, 122 Fla. 758, 165 So. 893 (Fla.1936).
Plaintiffs' action for imposition appears to be based on allegations that Humana unilaterally charged plaintiffs unreasonable amounts for pharmaceuticals, medical supplies, and laboratory services, in violation of an agreement to pay only a reasonable price for these items, not that Humana coercively exacted a promise to pay unreasonable prices. In this context, there appears to be no imposition in the act of sending a bill to a patient seeking payment of excessive charges once treatment has been completed, where there has been no agreement to pay such charges.
Even if this were viewed as an action based on allegations that Humana coerced plaintiffs into executing an agreement to pay unreasonable charges, imposition requires more than a mere agreement to pay overcharges. Any coercion that may have been practiced by Humana in obtaining an agreement to pay "prevailing rates" or "rates set out in the hospital's master charge *657 list" had ceased by the time payment was made by plaintiffs. It is recognized that:
[a] prior compulsion will not render the payment compulsory unless its influence continues up until the time of payment. On this principle, if a person obtains relief from duress by a promise of future payment and makes the payment after the duress is removed and when he has had opportunity to escape it by legal methods, he cannot afterward recover it.
66 Am.Jur.2d Restitution and Implied Contracts § 113, at 1050 (1973).[5] By voluntarily making payment of these alleged overcharges once the alleged coercion practiced by Humana had ceased, plaintiffs ratified or affirmed their prior agreement to pay these charges.
That the compulsion must continue through the time payment is made is illustrated by Ferrari v. Board of Health, 24 Fla. 390, 5 So. 1 (1888). There, the appellant complained of overcharges which had allegedly been made in violation of a quarantine act, which the appellant had ultimately paid by virtue of a bank draft, which had later been dishonored. In a suit brought to recover the amounts due on the bank draft, the appellant defended on the basis of the illegal charges. However, the court held that by paying after the duress had passed, the contract had been validated by ratification.[6]
In the present case, there is no coercion that continued through the time of payment. At best, the payments resulted from a mistake of law concerning the enforceability of the contract previously made with Humana. Relief based on this type of mistake was not pled and, in any event, does not furnish a basis for equitable relief once payment has been made. North Miami v. Seaway Corp., 151 Fla. 301, 9 So.2d 705 (Fla.1942); Jefferson County v. Hawkins, 23 Fla. 223, 2 So. 362 (Fla.1887); but see Sun Coast Int'l, Inc. v. Department of Business Regulation, 596 So.2d 1118 (Fla. 1st DCA 1992). The Seaway court stated:
Every man is supposed to know the law, and if he voluntarily makes a payment which the law would not compel him to make, he cannot afterwards assign his ignorance of the law as a reason why the state should furnish him with legal remedies to recover it.
9 So.2d at 707.[7]
Plaintiffs maintain that Humana is precluded from asserting voluntary payment *658 of the hospital's charges by reason of section 725.04, Florida Statutes (1991), which provides:
When a suit is instituted by a party to a contract to recover a payment made pursuant to the contract and by the terms of the contract there was no enforceable obligation to make the payment or the making of the payment was excused, the defense of voluntary payment may not be interposed by the person receiving payment to defeat recovery of the payment.
We conclude, however, that this statute speaks only to those situations in which the contract on its face does not call for payment, or the contract on its face excuses the payment. Here the contract does call for payment of either the hospital's "prevailing rates" or the "rates set out in the Hospital's Master Charge List." These obligations are plainly not unenforceable by the terms of the contract, as required by the statute. Rather, the claim here is that the expressly stated price term of each plaintiff's contract is unenforceable due to indefiniteness or the failure to adequately incorporate the Charge Master by reference.[8] Such a claim is subject to a voluntary payment defense.
Having found no error in the order entering final summary judgment in favor of Humana as against those plaintiffs who have fully paid their bills, we affirm the order. We decline to address the issues raised on cross-appeal, as this order was not appealable except with respect to those plaintiffs who have fully paid their bills and whom this court has determined are no longer parties to the action. With respect to these plaintiffs, the cross-appeal is moot.
Finally, although the lower court's action in summarily dismissing Eugene Kiernan as a class representative without a hearing in light of his death, some two and one-half years earlier, is understandable, it does appear the lower court erred in doing so without affording the plaintiffs the opportunity for a hearing on the issue of substitution. Fla.R.Civ.P. 1.260.
AFFIRMED in part; REVERSED in part; and REMANDED.
DAUKSCH and GOSHORN, JJ., concur.
NOTES
[1] Plaintiffs also contend on appeal that they cannot be held responsible for payments made by their insurance carriers. However, we see no appreciable distinction between the direct payments made by plaintiffs to the hospital and their direction to their carriers to pay their benefits directly to the hospital via the assignment of benefits executed by each plaintiff upon admission to the hospital.
[2] Hoffman's contract provided for payment of prevailing rates. She is the class representative of the patients who have fully paid.
[3] This statute has since been transferred to section 395.301(6), Florida Statutes. See Ch. 92-289, §§ 29, 98, Laws of Florida. The legislative history of the statute indicates that it is applicable only to "third party providers," such as outside labs, and does not control charges made by Humana "in-house" as a "direct" provider. We see no error in the lower court's ruling on this issue. Cf. Payne v. Humana Hosp., 20 Fla. L. Weekly D1575 (Fla. 1st DCA July 3, 1995), superseded on rehearing, 661 So.2d 1239 (Fla. 1st DCA 1995), review denied, 671 So.2d 788 (Fla.1996).
[4] Count I of the complaint, which is not involved in this appeal, seeks a declaratory judgment on behalf of those patients who have not paid all or portions of their bills concerning whether they are obligated to pay the balance allegedly owed to Humana. It is asserted in Count I that plaintiffs' contracts with Humana contain an "implied covenant" of reasonableness which has been breached by overcharges made by the hospital.
[5] As Justice Story explained in Commentaries Equity Jurisprudence (Legal Classics ed. 1988):

And where, after the contemplated events have occurred, and the pressure of necessity has been removed, the party freely and deliberately, and upon full information, confirms the precedent, contract, or other transaction, courts of equity will generally hold him bound thereby; for if a man is fully informed, and acts with his eyes open, he may, by a new agreement, bar himself from relief.
Id. at § 347, at 225.
[6] See also Jurgensmeyer v. Boone Hospital Center, 727 S.W.2d 441 (Mo.Ct.App.1987). The Missouri Court of Appeals held that the trial court properly dismissed a complaint for money had and received based on imposition which had been brought against a hospital because there were no allegations that the plaintiff had been obliged to pay the money before the hospital would treat the plaintiff's minor child. The Jurgensmeyer court recognized that an action for imposition would not lie absent allegations that the payment itself had been made under duress, and because the coercion had ceased by the time payment was made, the plaintiff had acted as a volunteer in making payment.
[7] Likewise, in Hawkins the court said:

It has been held that money voluntarily paid upon claim of right, with full knowledge of all the facts, cannot be recovered back merely because the party, at the time of payment, was ignorant, or mistook the law, as to his liability. The illegality of the demand paid constitutes of itself no ground for relief, but there must be, in addition, some compulsion or coercion attending its assertion which controls the conduct of the party making the payment. To constitute such compulsion or coercion as will render payment involuntary, there must be some actual or threatened exercise of power possessed, or supposed to be possessed, by the party exacting or receiving the payment over the person or property of the party making the payment, from which the latter has no other means of immediate relief than by advancing the money.
23 Fla. at 231, 2 So. at 365. The reason behind these rules was explained in New York Life Ins. Co. v. Lecks, 122 Fla. 127, 165 So. 50 (1935):
The reason of the rule that money voluntarily paid with full knowledge of the facts can never be recovered and its propriety are quite obvious when applied to a case of payment on a mere demand of money unaccompanied with any power or authority to enforce such demand, except by suit at law. In such case if the party would resist an unjust demand, he must do so at the threshold. The parties treat with each other on equal terms, and if litigation is intended by the one of whom the money is demanded, it should precede payment. When the person making the payment can only be reached by a proceeding at law, he is bound to make his defense in the first instance, and he cannot postpone the litigation by paying the demand in silence and afterward suing to recover the amount paid. Otherwise, the privilege is left to him of selecting his own time and convenience for litigation, delaying it, as the case may be, until the evidence on which his adversary would have relied to sustain his claim may be lost by the lapse of time and the many casualties to which human affairs are exposed. Id. at 135, 165 So. 50 (emphasis supplied).
[8] Plaintiff's counsel acknowledged at oral argument that plaintiffs do not claim that any payments were made in excess of the amounts agreed to in these contracts.