**SUNDANCE APARTMENTS I, INC., a Florida corporation, and all others similarly situated, Plaintiff,**

v.

**GENERAL ELECTRIC CAPITAL CORPORATION, a New York corporation; Gemsa Loan Services, L.P., a Texas joint venture partnership; and Wells Fargo Bank, N.A., a federally chartered bank, Defendants.**

No. 07–22852–CIV.

United States District Court, S.D. Florida, Miami Division.

May 6, 2008.

Tucker Ronzetti, Esq., Kozyak Tropin & Throckmorton, PA, Coral Gables, FL, for plaintiff.

## ORDER ON MOTIONS TO DISMISS

CECILIA M. ALTONAGA, District Judge.

**THIS CAUSE** came before the Court upon Defendant General Electric Capital Corporation's ("GECC['s]") Motion to Dismiss Count II of Amended Complaint with Prejudice [D.E. 34]; Defendant, GEMSA Loan Services, L.P.'s ("GEMSA['s]") Motion to Dismiss [D.E. 38]; and Defendant, Wells Fargo Bank, N.A.'s ("Wells Fargo['s]") Motion to Dismiss Amended Complaint [D.E. 42]. The Court has considered the pleadings, the parties' written submissions, and applicable law.

## I. BACKGROUND[1]

Plaintiff, Sundance Apartments I, Inc. ("Sundance"), a Florida corporation (*see Amended Complaint* [D.E. 27] ("*Am.Compl.*") at ¶ 5), brings this action individually and as a purported class action on behalf of a Reimbursement Class (*see id.* at ¶ 23).[2] The Reimbursement Class is composed of persons or entities who alleg-

---

1. All facts recited in this section are drawn from Plaintiff's Amended Complaint [D.E. 27].

2. Sundance initially brought this civil action on behalf of another class, a Declaratory Relief Class. (*See Am. Compl.* at ¶ 23). However, Sundance recently decided such a class was not feasible and filed a motion to withdraw that claim. (*See Plaintiff's Motion to Amend Class Definition by Interlineation* [D.E. 64] ("*Motion to Amend*") at 2 n. 3). The Court granted Plaintiff's Motion to Amend in an Order dated April 22, 2008 [D.E. 72]. Sundance also initially brought this action against Wells Fargo and GEMSA, individually and on behalf of the Reimbursement Class. (*See Am. Compl.* at ¶ 23). Sundance dropped the class claims against Wells Fargo and GEMSA. (*See Motion to Amend* at 1–2).

edly suffered similar damages, under similar circumstances as those alleged by Sundance in its Amended Complaint. (*See id.*).

This action arises from a dispute over the interpretation of a prepayment provision in a loan agreement Sundance entered into with GECC (the "Loan Agreement"). (*See Am. Compl.* at ¶¶ 1–2). Sundance entered into the Loan Agreement on April 30, 1998. (*See id.* at ¶ 9). GECC subsequently sold and assigned this Loan Agreement in order to create a commercial mortgage-backed security trust (the "CMBS Trust"). (*See id.* at ¶ 10). Sundance alleges that "GECC's sale price for the Loan was based upon its financial features, including its prepayment feature." (*Id.*). Wells Fargo became the trustee of the CMBS Trust pursuant to a Pooling and Servicing Agreement on June 1, 1999. (*See id.* at ¶ 11).

Sundance alleges that, at all material times, Wachovia Bank, N.A., and GEMSA serviced the Loan Agreement as authorized agents of Wells Fargo. (*See id.* at ¶ 12). Such services "include[d], among other things, determining amounts due under prepayment claims and collecting those amounts." (*Id.*). Sundance also alleges that "GEMSA serves as the consolidated servicing arm for the General Electric companies' lending and third-party investment activities" (*id.* at ¶ 13), and that GEMSA and GECC use the same counsel, Andrews and Kurth, L.L.P. ("A & K"). (*See id.*). A & K states on its website that it "strategically fuse[s] the origination, securitization[,] and servicing lines of business." (*Id.*). Additionally, Sundance alleges that A & K prepared the Loan Agreement for GECC and served as GEMSA's counsel for the prepayment of the Loan Agreement and similar loans. (*See id.*).

Sundance contends it was required to pay an improper "yield maintenance amount" under the yield maintenance provision found in the Loan Agreement ("YMA Provision"). (*See id.* at ¶ 2). The YMA Provision states:

As used herein, "Yield Maintenance Amount" means the sum of the present value on the date of prepayment of each Monthly Interest Shortfall (as hereinafter defined) for the remaining term of the Loan discounted at the Discount Rate.

The Monthly Interest Shortfall is calculated for each monthly payment date and is the product of (A) the prepaid principal balance of the Loan divided by 12, and (B) the positive result, if any, from (1) the yield derived from compounding semi-annually the Loan's Contract Rate minus (2) the Replacement Treasury Rate (as hereinafter defined).

(*Id.* at ¶ 15 (citation omitted) (emphasis deleted)).

Sundance alleges that the term "prepaid principal balance" found in the YMA Provision must be read to mean "the prepaid balance of the loan for each payment remaining in the term as amortized" in light of its plain meaning and industry custom. (*Id.* at ¶ 18). Defendants, however, rejected that interpretation and instead read the term to mean "a principal balance fixed at the time of prepayment," which allegedly generates a windfall (the "Windfall Interpretation") and permitted Defendants to recover a yield greater than they would have recovered if Sundance had made its regular payments through the maturity of the loan. (*Id.* at ¶ 19).

Sundance alleges that on April 19, 2007, after a number of fruitless attempts to agree on the correct interpretation of the YMA Provision, it paid the required prepayment amount "under protest" and, as a result, suffered damages. (*See id.* at ¶ 22). Sundance subsequently filed suit on November 1, 2007. It filed its Amended

Complaint on January 18, 2008, alleging claims for breach of contract against GECC and Wells Fargo, and deceptive and unfair trade practices against GECC and GEMSA.

Sundance's breach of contract claim alleges that "[t]he Windfall Interpretation violates the terms of the Loan Agreement." (*Id.* at ¶ 33). Sundance's claim that GECC violated the Florida Deceptive and Unfair Trade Practices Act (the "FDUTPA") is premised upon its allegation that:

> GECC committed unfair and deceptive business practices by (a) presenting the YMA Provision as a provision used to generate "Yield Maintenance" when in fact it is used to create a windfall in excess of yield maintenance; and (b) failing to adequately and transparently disclose that the Windfall Interpretation would be used for the calculation of the "Yield Maintenance Amount."

(*Id.* at ¶ 36). Sundance alleges that GEMSA violated the FDUTPA when GEMSA subsequently used the Windfall Interpretation to calculate the yield maintenance amount Sundance would have to pay under the YMA Provision. (*See id.* at ¶ 37). Sundance also alleges that GECC was aware of, and agreed with, GEMSA's application of the Windfall Interpretation. (*See id.* at ¶ 38).

Finally, Sundance alleges that it suffered actual damages when it paid the required prepayment amount under the Windfall Interpretation (*see id.* at ¶¶ 21–22, 39), and that, as a result, it is entitled to actual damages, calculated as the difference between the alleged correct yield maintenance prepayment amount and the Windfall Interpretation as wells as costs, attorney's fees, and other relief. (*See id.* at ¶ 39).

Defendants now move to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). GECC moves to dismiss the second cause of action of the Amended Complaint alleging a violation of the FDUTPA on the grounds that Sundance has failed to allege sufficient facts regarding GECC's involvement to sustain a cause of action, and because the claim is barred by Section 501.212, Florida Statutes, and by the applicable statute of limitations. GEMSA also moves to dismiss the FDUTPA claim against it, on the ground that Sundance has failed to allege sufficient facts regarding GEMSA's involvement in a FDUTPA violation. Finally, Wells Fargo moves to dismiss Sundance's breach of contract claim because it is barred by Florida's voluntary payment doctrine.[3] The undersigned considers each of these arguments in turn.

## II. ANALYSIS

### A. Legal Standard

A motion to dismiss a complaint for failure to state a claim requires that a court accept the facts pleaded as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro America, S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.,* 711 F.2d 989, 994–95 (11th Cir.1983). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests. . . .' " *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Nevertheless, "[w]hile a complaint at-

---

**3.** GECC has indicated it is also relying on Wells Fargo's arguments in favor of dismissal of Sundance's breach of contract claim.

tacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S.Ct. at 1964–65 (internal citations omitted). "[A] complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir.2008) (quoting *Twombly*, 127 S.Ct. at 1965).

## B. FDUTPA Claim

### 1. Whether Sundance has Adequately Plead a Claim Under the FDUTPA

■ The FDUTPA provides a cause of action for "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce. . . ." Fla. Stat. § 501.204(1) (2001). "Pursuant to § 501.211, any person who has suffered losses as a result of a violation may commence a private action to recover actual damages, attorney's fees, and costs." *Zlotnick v. Premier Sales Group, Inc.*, 480 F.3d 1281, 1284 (11th Cir.2007) (citing Fla. Stat. § 501.211(2)). In order for Sundance to establish a cause of action for damages under the FDUTPA, it must sufficiently allege the following elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Rollins, Inc. v. Butland*, 951 So.2d 860, 869 (Fla. 2d DCA 2006) (citations omitted)).

In construing what constitutes a deceptive act or unfair practice, "[t]he Florida Supreme Court has noted that 'deception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment.'" *Zlotnick*, 480 F.3d at 1284 (quoting *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So.2d 773, 777 (Fla.2003)).

### a. Sundance's FDUTPA Claim Against GECC

■ GECC argues that Sundance's claim against it for violation of the FDUTPA must be dismissed because Sundance has failed to allege GECC engaged in any unfair or deceptive acts or practices with respect to the Loan Agreement. GECC contends that all of the deceptive acts which Sundance alleges in connection with the Windfall Interpretation occurred in 2007, yet it is undisputed that GECC sold and assigned the Loan Agreement on or before June 1, 1999. As a result, GECC maintains it is not plausible that GECC participated in allegedly unfair or deceptive conduct that occurred eight years after it sold its interest in the Loan Agreement.

Sundance alleges that prior to its attempt to prepay the Loan Agreement in January 2007, it "reasonably believed that the YMA Provision operated to collect yield maintenance upon prepayment" (*Am. Compl.* at ¶ 36), because GECC "present[ed] the YMA Provision as a provision used to generate 'Yield Maintenance'" (*id.*). Based on its plain meaning, Sundance understood the term "yield maintenance" to mean that a note holder would receive a yield that matched the yield it would have received if the borrower had made its payments throughout the maturity of a loan. (*See id.* at ¶ 18). Sundance alleges, however, that the YMA Provision was actually intended to permit the Windfall Interpretation (*see id.*) which was later applied by GEMSA. (*See id.* at ¶ 37). As a result of GECC's alleged misrepresentation regarding the YMA Provision, Sundance suffered losses in 2007 when it was required to make its prepayment under

the Windfall Interpretation. (*See id.* at ¶ 39).

In order for Sundance's FDUTPA claim to survive this motion to dismiss, Sundance is required to allege only a short and plain statement sufficient to put the Defendants on fair notice of its cause of action. *See Twombly,* 127 S.Ct. at 1964. GECC is correct that Sundance's allegations must rise above the speculative level, and Sundance has met this burden. (*See id.* at 1965). Sundance has alleged that GECC's creation and presentation of the YMA Provision as a "yield maintenance" provision was deceptive (*see id.* at ¶ 36), because the provision was intended to allow GECC, or its successor, to charge Sundance a repayment amount that allegedly exceeds the plain meaning and common understanding of the term "yield maintenance" (*see id.* at ¶ 18). Such allegations, accepted as true, are sufficient to constitute "a representation, omission, or practice that is likely to mislead [a] consumer acting reasonably in the circumstances...." *Zlotnick,* 480 F.3d at 1284.

Sundance also alleges that, as a result of GECC's deception, it subsequently suffered actual damages when it was required to make a prepayment in excess of "yield maintenance." (*See id.* at ¶ 39). Thus, accepting all of the facts plead in the Amended Complaint as true and in the light most favorable to Sundance, the required elements of Sundance's FDUTPA claim against GECC—a deceptive act, cau-

sation, and damages—have been adequately plead. *See Rollins, Inc.,* 951 So.2d at 869.[4]

**b. Sundance's FDUTPA Claim Against GEMSA**

GEMSA asserts that Sundance's FDUTPA claim against it should be dismissed because Sundance has failed to allege what actions, if any, GEMSA took to portray the YMA Provision in a deceptive or misleading way. Additionally, GEMSA argues that Sundance has failed to allege any facts demonstrating how the YMA Provision was misleading.

As an initial matter, and as discussed, Sundance has sufficiently alleged how GECC misled Sundance regarding the nature the YMA Provision. Sundance has also alleged, however, the specific actions GEMSA took which violated the FDUTPA. The Amended Complaint states that GEMSA violated the FDUTPA "by effectuating GECC's deception in using the Windfall Interpretation to calculate a 'Yield Maintenance Amount,' creating a windfall in excess of yield maintenance" (*see Am. Compl.* at ¶ 37), despite Sundance's assertion that "the Windfall Interpretation was incorrect" (*id.* at ¶ 21). Thus, Sundance has alleged that GEMSA knowingly applied an interpretation of the YMA Provision that was inconsistent with the manner in which that provision was described in the Loan Agreement, and ig-

4. GECC also argues that Sundance has failed to allege any relationship or connection between GECC and GEMSA sufficient to sustain a claim that GECC either controlled or may be held responsible for GEMSA's actions in applying the Windfall Interpretation. In its Amended Complaint, Sundance alleges that GEMSA serves as the consolidated servicing arm for the General Electric companies' lending and third-party investment activities (*see Am. Compl.* at ¶ 13), and that GEMSA and GECC use the same counsel, A & K, who prepared the Loan Agreement for GECC and served as GEMSA's counsel for the prepayment of the Loan Agreement and similar loans (*see id.*). As discussed in this Order, the undersigned concludes that Sundance has adequately alleged a claim against GECC under the FDUTPA, independent of any agency relationship between GECC and GEMSA. Accordingly, a determination as to whether Sundance has adequately alleged such an agency relationship is unnecessary to the disposition of the instant motions.

nored Sundance's assertions that such an interpretation was incorrect.

Although there does not appear to be any case law directly addressing the sufficiency of Sundance's claim against GEMSA, the undersigned has previously observed that under Florida law it is sufficient to allege that a party directly participated in a violation of the FDUTPA, even if that violation was initiated by another. *See Williams v. Edelman*, 408 F.Supp.2d 1261, 1275 (S.D.Fla.2005) (holding that plaintiff's allegation that debt collectors attempted to collect on a debt to a condominium association notwithstanding their knowledge that plaintiff did not really owe that debt to the condominium was sufficient to state a claim under the FDUTPA) (citations omitted); *see also KC Leisure, Inc. v. Haber*, 972 So.2d 1069, 1074 (Fla. 5th DCA 2008) (" 'In order to proceed against an individual for a violation of FDUTPA, a plaintiff must allege that the individual was a direct participant in the dealings.' ") (quoting *Aboujaoude v. Poinciana Development Company II*, 509 F.Supp.2d 1266, 1276–77 (S.D.Fla.2007)). Here, similar reasoning applies. Sundance has alleged that GEMSA's application of the Windfall Interpretation constituted direct participation in the deception initiated by GECC through its presentation of the YMA Provision. GEMSA subsequently caused Sundance to suffer actual damages when it required Sundance to pay a prepayment amount which GEMSA knew exceeded "yield maintenance." (*See id.* at ¶ 21). Therefore, accepting the facts pleaded as true and in the light most favorable to Sundance, the allegations in the Amended Complaint are sufficient to establish a FDUTPA claim against GEMSA. *See Rollins, Inc.*, 951 So.2d at 869.

### 2. Applicability of the FDUTPA to the Loan Agreement

██ GECC also contends that even if Sundance were capable of alleging a claim under the FDUTPA, its claim would be barred as a matter of law because of a statutory exemption which applies to the Loan Agreement. Section 501.212(7)(a), Florida Statutes, provides that the FDUTPA does not apply to "[c]auses of action pertaining to commercial real property located in [Florida] if the parties to the action executed a written lease or contract that expressly provides for the process of resolution of any dispute and the award of damages, attorney's fees, and costs, if any...." GECC argues that this is a cause of action pertaining to commercial real property. In support of this assertion, GECC attaches to the Motion the complete Loan Agreement, which indicates the $14,000,000 loan at issue is secured by real property located in Miami–Dade County, Florida.[5] Although GECC does not cite any additional authority demonstrating this is sufficient to render Sundance's FDUTPA claim a cause of action "pertaining to commercial real property" located in Florida, the undersigns assumes it is for purposes of this Order.

According to GECC, the complete Loan Agreement "contains various provisions that expressly provide mechanisms for the resolution of disputes arising thereunder, including provisions for Reimbursement of Expenses, Waiver of Jury Trial, and Waiver of Punitive or Consequential Damages

---

**5.** A court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment "if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). The Loan Agreement, an excerpt of which is attached to Sundance's Amended Complaint, is central to its claim and may therefore be properly considered in the context of the instant motions.

and the application of Florida law." (*GECC's Motion to Dismiss Count II of Amended Complaint with Prejudice* at 18). As a result, GECC argues that Sundance's claim falls squarely within the ambit of the FDUTPA exemption set forth in Section 501.212(7)(a), and should be dismissed.

After careful consideration of the cited provisions in the Loan Agreement and the required elements of the FDUTPA exemption, however, the undersigned is not persuaded by GECC's argument. The FDUTPA exemption at issue requires "a written . . . contract that *expressly* provides for the *process* of resolution of any dispute." Fla. Stat. § 501.212(7)(a) (emphasis added). GECC cites a series of provisions from the contract from which it contends one may infer that the parties intended to resolve any disputes regarding the contract by non-jury trial. However, none of the provisions cited by GECC support the proposition that a bench trial is the sole or even preferred process of dispute resolution agreed to by the parties.

For instance, none of the cited provisions would prohibit the parties from seeking an alternative process for the resolution of the instant dispute, such as arbitration. Section 501.212(7)(a) requires that the written contract *expressly* provide for the process of resolution of any disputes. Merely citing a series of provisions that reference various mechanisms for dispute resolution which the parties may utilize fails to satisfy this standard.

### 3. Whether Sundance's FDUTPA Claim is Barred by the Applicable Statute of Limitations

 GECC also argues that Sundance's FDUTPA claim is barred by the applicable statute of limitations. "Actions other than for recovery of real property shall be commenced . . . [w]ithin four years . . . [if][a]n action [is] founded on a statutory liability." Fla. Stat. § 95.11(3)(f) (2006). "It is axiomatic that under Florida law, a cause of action accrues, for statute of limitations purposes 'when the last element constituting the cause of action occurs.' " *New Lenox Indus., Inc. v. Fenton*, 510 F.Supp.2d 893, 906 (M.D.Fla.2007) (citing Fla. Stat. § 95.031(1)). As described, the three elements of a FDUTPA claim are a deceptive act or unfair practice, causation, and actual damages. *See Rollins, Inc.*, 951 So.2d at 869.

Sundance asserts that it only discovered it would be required to make a prepayment allegedly in excess of yield maintenance under the YMA Provision in 2007 (*see Am. Compl.* at ¶¶ 18–19), and it therefore did not suffer actual damages as a result of GECC's alleged FDUTPA violation until it made that required prepayment (*see id.* at ¶¶ 22, 39). As a result, the final element of Sundance's FDUTPA claim against GECC, actual damages, did not occur until April 19, 2007, the date of Sundance's prepayment. (*See id.* at ¶ 22). The Amended Complaint was filed on January 18, 2008. Accepting the facts pleaded in the Amended Complaint as true, Sundance's cause of action accrued within the applicable four-year statute of limitations.

### C. Breach of Contract Claim

#### 1. The Voluntary Payment Doctrine

 Wells Fargo asserts that the first count of the Amended Complaint against Wells Fargo and GECC for breach of contract is barred by Florida's voluntary payment doctrine. Florida's "voluntary payment doctrine provides that 'where one makes a payment of any sum under a claim of right with knowledge of the facts, such a payment is voluntary and cannot be recovered.' " *Ruiz v. Brink's Home Sec., Inc.*, 777 So.2d 1062, 1064 (Fla. 2d DCA 2001) (quoting *City of Miami v. Keton*, 115 So.2d 547, 551 (Fla.1959)); *see also San-*

*chez v. Time Warner, Inc.*, 1998 WL 834345, at *2 (M.D.Fla.1998) ("It is a well-recognized rule that money voluntarily paid under a claim of right to the payment, and with knowledge of the facts by the person making the payment, cannot be recovered back, and this is true even though the claim thus paid was illegal . . . .") (quoting *McMullen v. Inland Realty Corp.*, 113 Fla. 476, 152 So. 740 (1933)). Sundance concedes it paid the prepayment fee pursuant to the Windfall Interpretation voluntarily, although it alleges it did so "under protest." (*Am. Compl.* at ¶ 22). Despite the voluntary nature of its payment, Sundance contends that Section 725.04, Florida Statutes, exempts its breach of contract claim from the application of the voluntary payment doctrine.[6]

Section 725.04 provides that:

When a suit is instituted by a party to a contract to recover a payment made pursuant to the contract and by the terms of the contract there was no enforceable obligation to make the payment or the making of the payment was excused, the defense of voluntary payment may not be interposed by the person receiving payment to defeat recovery of the payment.

Fla. Stat. § 725.04.

Wells Fargo argues, however, that Section 725.04 does not apply to Sundance's prepayment of the Loan Agreement. In support of its position, Wells Fargo relies on a Florida appellate decision concluding that Section 725.04 only applies "to those situations in which the contract on its face does not call for payment, or the contract on its face excuses the payment." *Hall v. Humana Hosp. Daytona Beach*, 686 So.2d 653, 658 (Fla. 5th DCA 1996). In *Hall*, the court applied the voluntary defense doctrine to the plaintiffs' payment of certain hospital charges where the contract called for "payment of either the hospital's 'prevailing rates' or the 'rates set out in the Hospital's Master Charge List' " because these obligations were "plainly not unenforceable *by the terms of the contract* . . . ." *Id.* (emphasis in original). There was no dispute that the payments were called for by the contract; the claim presented was "that the expressly stated price term of each plaintiff's contract is unenforceable due to indefiniteness or the failure to incorporate the Charge Master by reference." *Id.* The court specifically noted that the plaintiffs in *Hall* were not claiming that any payments were made "in excess of the amounts agreed to . . . ." *Id.* at n. 8.

Similarly, in *Sanchez*, upon which Wells Fargo also heavily relies, the district court determined that Section 725.04 did not apply to a plaintiff's voluntarily payment of a $6.00 late charge because the amount of the late charge and the circumstances under which it was due were expressly stated in the underlying cable service contract. *Sanchez*, 1998 WL 834345, at *3. Notably, the plaintiff in Sanchez did not allege that she was required to make any payments in excess of the late charge specified in the

---

**6.** The Loan Agreement states it is governed by Florida law, and Sundance does not appear to dispute that Florida's voluntary payment doctrine would apply to its claim absent the operation of Section 725.04. Sundance also does not dispute that Wells Fargo's assertion of the voluntary payment defense may be properly considered by the Court in the context of a motion to dismiss. Based on the allegations in the Amended Complaint regarding the circumstances of Sundance's prepayment of the

Loan Agreement, the undersigned concludes that Wells Fargo's affirmative defense of the voluntary payment doctrine may be properly considered on this motion to dismiss. *See Quiller v. Barclays American/Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir.1984) ("'[A] complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint.'") (citations omitted).

contract, but rather that the charge should be deemed unenforceable because "it was grossly disproportionate to any damages that may be sustained by the late payment of any cable bill." *Id.* at *1. Wells Fargo contends that, as in *Hall* and *Sanchez*, there is no dispute in the instant case that the Loan Agreement contained an enforceable obligation that Sundance pay a prepayment premium and that the parties simply disagree as to the calculation of that prepayment.

Sundance, however, cites a series of cases for the proposition that Section 725.04 clearly applies to claims to recover overpayments that were unenforceable based on the parties' contract. *See, e.g., Sensormatic Sec. Corp. v. Sensormatic Electronics Corp.*, 249 F.Supp.2d 703, 710–12 (D.Md.2003) (holding that Section 725.04 barred application of voluntary payment defense to payment of excessive commissions); *Saglio v. Chrysler First Commercial Corp.*, 839 F.Supp. 830, 834–835 (M.D.Fla.1993) (applying Section 725.04 to preclude application of voluntary payment doctrine in suit to recover money improperly paid under a guaranty). In *Sensormatic*, for instance, the district court, applying Florida law, concluded that the plaintiff was not barred by the voluntary payment doctrine from seeking to recover commissions it paid on items which fell outside the category of items for which commissions were due under the contract. 249 F.Supp.2d at 711–12. Similarly, Sundance alleges that the prepayment amounts it made in excess of normal "yield maintenance" were outside the scope of the prepayment fee due under the terms of the Loan Agreement and were therefore not made pursuant to an enforceable obligation.

Sundance's claim is that, on its face, the Loan Agreement only creates an enforceable obligation that "results in the noteholder receiving a yield that matches the yield on the notes had the borrower made its regular payments through maturity." (*Am. Compl.* at ¶ 18). Sundance alleges that based on a plain reading of the Loan Agreement and the term "yield maintenance," the term "prepaid principal balance" found in the YMA Provision can only be read to mean "the prepaid balance of the loan for each payment remaining in the term *as amortized.*" (*Id.*) (emphasis in original). Therefore, the additional prepayment amount Sundance was required to make pursuant to the Windfall Interpretation, which generated "a yield greater than the yield that would have been paid had the borrower made the regular payments though maturity" (*id.* at ¶ 19), was not expressly referenced in the Loan Agreement and therefore was not an enforceable obligation. *See* Fla. Stat. § 725.04. As plead, Sundance's prepayment in excess of the "yield maintenance" amount was not made pursuant to an enforceable obligation on the face of the Loan Agreement, and its breach of contract claim is not barred by the voluntary payment doctrine.[7]

## III. CONCLUSION

In light of the foregoing, it is **ORDERED AND ADJUDGED** that GECC's Motion to Dismiss Plaintiff's Second Amended Complaint [**D.E. 34**], GEMSA's Motion to Dismiss [**D.E. 38**], and Wells

---

**7.** In its Reply Brief [D.E. 56 at n. 2] in support of its Motion, Wells Fargo requests that the court's disposition of this issue not prejudice Wells Fargo's ability to raise a defense based on the voluntary payment doctrine in the context of a future summary judgment motion. Wells Fargo does not articulate, however, what factual information may be uncovered during discovery which would impact the court's analysis of this issue. To the extent such information is discovered, Wells Fargo is free to raise appropriate arguments regarding that evidence at the summary judgment stage.

Fargo's Motion to Dismiss Amended Complaint [D.E. 42] are **DENIED.**

**DONE AND ORDERED.**