**SPIRAL DIRECT, INC. and Spiral Direct, Ltd., Plaintiffs,**

**v.**

**BASIC SPORTS APPAREL, INC., Defendant.**

**Case No: 6:15–cv–641–Orl–28TBS**

United States District Court, M.D. Florida, Orlando Division.

Signed 11/24/2015

David E. Cannella, Jill S. Riola, Carlton Fields Jorden Burt, PA, Orlando, FL, Stephen J. Leahu, Carlton Fields Jorden Burt, PA, Tampa, FL, for Plaintiff.

Edmund J. Gegan, BKN Murray, LLP, St. Petersburg, FL, for Defendant.

## ORDER

JOHN ANTOON II, United States District Judge

Plaintiffs Spiral Direct, Inc. ('Spiral U.S.') and Spiral Direct, LTD. ('Spiral U.K.') (collectively, 'Plaintiffs') filed a seven-count complaint against Defendant Basic Sports Apparel, Inc. ("BSA") arising from a dispute over the trademark 'Spiral' on certain clothing. (See Am. Compl., Doc. 16). BSA moves to dismiss the Complaint, or, in the alternative, for a more definite statement of Counts Six and Seven. (Doc. 27). After considering the motion to dismiss, the alternative motion, and Plaintiffs' response (Doc. 35), I conclude that the motions must be denied.

## I. Background

Plaintiffs are related companies with overlapping management and are in the business of manufacturing and distributing "Gothic" style clothing bearing the mark "Spiral" in a distinctive script ("Plaintiffs' mark"). (Am. Compl. at 3). Spiral U.K.'s immediate predecessor-in-interest is Spiral Design Partnership, which began selling clothing in the U.S. in 1993, and over the internet in 1997. (Id. at 3–4). In 1999, Spiral U.K. wholly acquired its predecessor. (Id.).

On January 22, 2015, Plaintiffs received a cease and desist letter from BSA's attorney. (Am. Compl. at 4). The letter informed Plaintiffs that on January 19, 1999, the United States Patent and Trademark Office ("USPTO") issued BSA a trademark under U.S. Registration No. 2,218,515 for the mark "Spiral" on various items of clothing ("BSA mark"). (Id.). In its registration application, BSA stated that it

first used the mark on June 15, 1997. (Id.). The letter further claimed that Plaintiffs' "actions constitute trademark infringement and unfair competition under both state and federal law, including the Lanham Act," (Ex. C to Am. Compl., Doc. 16–3), and requested that Plaintiffs "discontinue any and all use of the [i]nfringing [t]rademark with the marketing, sale, distribution, or identification of products or services," (id.). It further stated that "my client has instructed me to file suit unless you respond promptly and appropriately to this demand." (Id.).

BSA owns and operates a business that manufactures clothing for sporting retailers that is sold under the trademarks of those third-party retailers. (Id. at 5). Plaintiffs allege that "BSA may manufacture a few [goods bearing the BSA mark, but] only ... by using the remaining fabric from a particular job order." (Id.). BSA "does no publicity, marketing, or advertising" for any goods bearing the BSA mark, and only sells a "very limited quantity of a very limited number of items ... set forth in (their trademark registration]." (Id.). Plaintiffs allege that at the time BSA applied for its trademark, it should have known that Plaintiffs' predecessor was using Plaintiffs' mark in commerce in the United States as early as 1993. (Id.). For that reason and others, Plaintiffs allege that BSA fraudulently obtained its trademark from the USPTO.[1] (Id. at 5–6).

Under these circumstances, Plaintiffs sued BSA for (i) declaratory judgment of non-infringement under the Lanham Act (Count 1); (ii) declaratory judgment that BSA's claims are barred by the doctrine of laches (Count 2); (iii) declaratory judgment of invalidity of BSA's registered

---

1. Plaintiff alleges that BSA made similar fraudulent misrepresentations when it subsequently filed with the USPTO several Declarations under the Lanham Act: section 8 (Dec-laration of Use), section 15 (Declaration of Incontestability), and sections 8 & 9 (Combined Declaration of Use and Application for Renewal). (Id. at 6-9).

trademark for abandonment (Count 3) and for fraud on the USPTO (Count 4); and (iv) unfair competition arising from trademark infringement under the Lanham Act (Count 5),[2] the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count 6),[3] and Florida common law (Count 7). (*Id.* at 9–15).

## II. Legal Standard

Generally, "(a) pleading that states a claim for relief must contain .... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ.P. 8(a)(2). "[D]etailed factual allegations" are not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955). At the motion to dismiss stage, a court must evaluate all plausible inferences derived from the facts of the complaint in favor of the plaintiff. *Whitwam v. JetCard Plus, Inc.,* 34 F.Supp.3d 1257, 1259 (S.D.Fla.2014). One caveat to the general pleading standard of Rule 8 is that "[i]n alleging fraud .... a party must state with particularity the circumstances constituting fraud." Fed. R. Civ.P. 9(b). In considering a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a court limits its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La*

*Grasta v. First Union Sec., Inc.,* 358 F.3d 840, 845 (11th Cir.2004).

## III. Analysis

### A. Shotgun Pleading

BSA argues that Plaintiffs' First Amended Complaint is a "shotgun pleading." The purpose of the rule against shotgun pleadings is to ensure that a complaint gives "defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cty. Sheriff's Office,* 792 F.3d 1313, 1323 (11th Cir.2015). The Eleventh Circuit condemns the practice of incorporating all preceding allegations in each successive count because it "lead[s] to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions." *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.,* 305 F.3d 1293, 1295 (11th Cir.2002). Here, although Plaintiffs incorporate paragraphs 1 through 37 in each of their seven counts, "(t)he allegations of each count are not rolled into every successive count on down the line." *Weiland,* 792 F.3d at 1324. Plaintiffs' re-alleging of paragraphs 1 through 37 in each count is permissible so long as it does not "materially increase[ ] the burden of understanding the factual allegations underlying each count." *Id.* Paragraphs 1 through 37 of the Complaint set forth the background allegations of Plaintiffs' claims and are not so voluminous, overlapping, or confusing that they materially increase the burden of understanding the grounds upon which Plaintiffs' claims rest. Therefore, BSA's motion must be denied on this ground.

### B. Count One

Regarding Plaintiffs' claim for a declaration of non-infringement, BSA ar-

---

**2.** This claim is brought pursuant to section 43(a) of the Lanham Act, codified as 15 U.S.C. § 1125(a).

**3.** Sections 501.201–.23, Florida Statutes.

gues that Plaintiffs do not allege enough factual detail to overcome the incontestable status of BSA's trademark. A registered trademark is incontestable if it "has been in continuous use for five consecutive years subsequent to the date of such registration," 15 U.S.C. § 1065. When a right to use a mark has become incontestable—and BSA argues that its mark qualifies—registration of the mark is deemed conclusive evidence of the registrant's exclusive right to use the mark. 15 U.S.C. § 1115(b). Despite achieving five years of continuous use, however, a mark is not incontestable where "the use of the mark registered ... infringes a valid right acquired under the law of any State or Territory by *use of a mark ... continuing from a date prior to the date of registration"*—the "prior use defense." 15 U.S.C. § 1065 (emphasis added).

> The elements to a so-called "prior use" defense under 15 U.S.C. § 1065 are: (i) acquisition of trademark rights under state law prior to the date of incontestable registration; (ii) continuance of use of ... the trademark from that date; and (iii) that the prior use is on goods or services which are in issue in the case [to which] infringement is proven.

*Times Newspapers, Ltd. v. Times Publ'g Co.*, No. 92–1435–CIV–T–15(A), 1993 WL 120614, at *3 (M.D.Fla. Jan. 13, 1993). Where a plaintiff holds only a common law trademark, as Plaintiffs allege that they do, "the scope of protection accorded [their] mark is coextensive only with the territory throughout which it is known and from which it has drawn its trade." *Tana*

*v. Dantanna's*, 611 F.3d 767, 780 (11th Cir.2010).

■ Plaintiffs have sufficiently pleaded each of the three elements of the "prior use" defense. As to the first element, Plaintiffs allege they "have been selling and offering for [sale] some or all of the [goods bearing the Spiral mark] in the [U.S.] under one or more of [their common law trademarks] since at least as early as 1993"—six years before BSA was issued its registered trademark in 1999. (Am. Compl. at 3–4). This satisfies the requirement that Plaintiffs obtained the trademark before BSA. Further, the allegation that Plaintiffs sold their products in the United States can reasonably be construed to mean that the geographic scope of their common law trademark extends to each state in which BSA sells the goods at issue. Finding otherwise would require a factual determination that cannot be made at this stage.

As to the second element, Plaintiffs allege that they "have been *using* one or more of their [trademarks] in the [U.S.] since at least 1993." (*Id.* at 10 (emphasis added)). Accepted as true, Plaintiffs' "use" of their trademark since 1993 can be reasonably understood as continuous use. And finally, Plaintiffs sufficiently allege that they were selling the same goods at issue.[4] Additional detailed factual information regarding the exact dates Plaintiffs began selling each type of garment is available through discovery. BSA's motion is due to be denied on this ground.

## C. Count Two

■ In Count Two, Plaintiffs seek a declaration that BSA's infringement claims

---

4. Plaintiffs allege that their predecessor sold "t-shirts, long-sleeved t-shirts, and hooded sweatshirts" and that Plaintiffs currently sell "corsets, dresses, hoodies, onesies, jackets, leggings, ponchos, pajama sets, skirts, tops, workshirts, t-shirts, pants, swim shorts, as

well as accessories and related goods." (*Id.* at 3). The Complaint also alleges that BSA's registered trademark is for "jackets, pullovers, hats, jeans, T-shirts, vests, shorts, underwear, shoes, socks, gloves, headbands, and scarves." (*Id.* at 4).

are barred by laches. There are three elements of a laches defense in a lawsuit for trademark infringement: "(1) a delay in asserting a right or a claim; (2) that the delay was not excusable; and (3) that there was undue prejudice to the party against whom the claim is asserted." *Kason Indus., Inc. v. Component Hardware Grp., Inc.*, 120 F.3d 1199, 1203 (11th Cir. 1997). While it is true that in order to measure the length of delay courts will measure "from the time at which the plaintiff knows or should know she has a provable claim for infringement," *Id.* at 1206, BSA cites no authority for the proposition that a specific date must be plead in the complaint.

 Plaintiffs have sufficiently pleaded laches. As to the first element of "delay," Plaintiffs allege that BSA's claims of infringement were asserted "twenty-two ... years after [Plaintiffs] first commenced use of [their common law trademarks] in the [U.S.], and ... eighteen ... years after BSA allegedly began use of [its registered trademark]." (Am. Compl. at 10). As to the second element of "inexcusable delay," Plaintiffs allege that "[BSA] knew, or should have known, that Plaintiffs were using their [common law trademarks] in the [U.S.] long before [BSA] first started using its [registered trademark] and long before [BSA] sent the [cease and desist letter]." (*Id.* at 11). Finally, as to the third element of "undue prejudice," Plaintiffs allege that they "have been using [their common law trademarks] in the United States since 1993[;]" have "enjoyed uninterrupted use over that [twenty-two] year period[;]" and "have come to rely on their ability to use [their trademark] ... without interference from BSA." (*Id.* at 10). It is reasonable to infer that Plaintiffs' longtime reliance on their previously unchallenged trademark caused them undue prejudice. (*See id.* at 11 ("[BSA's]

inexcusable delay in failing to assert its purported rights in [their registered trademark] against [Plaintiffs] has caused, and continues to cause, prejudice and damage to the [Plaintiffs]."). Therefore, BSA's motion fails on this ground.

### D. Count Three

 Plaintiffs allege in Count Three that BSA abandoned its trademark. "Under the Lanham Act, a trademark is deemed abandoned, and thus no longer valid, '[w]hen its use has been discontinued with intent not to resume such use.'" *Nat. Answers. Inc. v. SmithKline Beecham Corp.*, 529 F.3d 1325, 1329 (11th Cir. 2008) (quoting 15 U.S.C. § 1127). There is prima facie evidence that the trademark is abandoned where a trademark is unused for three years. *Id.* at 1329–30. Here, Plaintiffs allege that "BSA owns and operates a clothing business in El Paso, [Texas] manufacturing private-label[ ] clothing ... to be sold under the trademarks of various [sporting goods] retailers" and that it produces goods under its own trademark "only sporadically, if at all, by using the remaining fabric from a particular job order." (Am. Compl. at 5). "[I]f and to the extent that it sells any [goods under its trademark], BSA only sells a very limited quantity [and] number of items listed in the description [of its trademark registration]." (*Id.*). Further, "BSA does not use, and has not used, [its registered trademark] on *all* of the [the goods] listed in its [trademark registration]." (*Id.* (emphasis in original)). Accepted as true, it is reasonable to infer that BSA's inconsistent manufacturing practices have left large enough gaps in its production of goods to constitute abandonment under the Lanham Act. Therefore, BSA's motion is due to be denied on this ground,

### E. Count Four

In Count Four, Plaintiffs allege that BSA committed fraud on the USPTO.

BSA argues that Plaintiffs have failed to plead fraud with sufficient particularity and that even if they have, Count Four is barred by the statute of limitations.

### 1. Sufficiency of Pleading

 Fraud in obtaining a trademark occurs "when an applicant knowingly makes false, material representations of fact in connection with an application" or in a verified declaration. *Metro Traffic Control. Inc. v. Shadow Network Inc.*, 104 F.3d 336, 340 (Fed.Cir.1997). In stating a claim of fraud, Federal Rule of Civil Procedure 9(b) requires that a complaint set forth (1) precisely what statements were made, (2) the time and place of each statement and the person responsible for the same, (3) the content of such statements and how they misled the plaintiff, and (4) what the defendants gained through the fraud. *Ziemba v. Cascade Int'l. Inc.*, 256 F.3d 1194, 1202 (11th Cir.2001).

 Plaintiffs sufficiently state a claim for fraud. The Complaint references BSA's application for a registered trademark, wherein the vice president of BSA stated that "to the best of his knowledge and belief, no other person, firm, corporation or association has the right to use the ... mark in commerce either, in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods or services of such other person, to cause confusion, or to cause mistake, or to deceive," (Ex. B to Am. Compl., Doc. 16–4, at 4). Plaintiffs allege, however, that Plaintiffs were selling and distributing their trademarked products in the United States in 1993 and over the internet in 1997, (Am. Compl. at 3–4), and that several years passed before BSA applied for its registered trademark with the USPTO in 1999, (*Id.* at 4). Plaintiffs further allege that BSA knew or should have known at the time it filed its application that Plaintiffs, through their predecessor, were already using the Spiral trademark in commerce in the United States. (*Id.* at 6). Paragraphs 18–23 of the Complaint further allege that BSA does not make and sell products bearing the BSA mark to the extent represented in the application.[5] Thus, Plaintiffs allege that "BSA misrepresented the nature of the use in commerce of the BSA [m]ark as set forth in the [trademark application." (Am. Compl. at 5). These allegations state a claim for fraud with sufficient particularity to meet the requirement of Rule 9(b). *See Meth Lab Cleanup, LLC v. Spaulding Decon, LLC*, No. 8:10–CV–2550–T30TGW, 2011 WL 398047, at *2 (M.D.Fla. Feb. 4, 2011). The question of whether BSA's misrepresentations were "fraudulent" statements or merely "false" statements is a factual question that cannot be resolved at this stage. *See Metro Traffic Control*, 104 F.3d at 340.

### 2. Statute of Limitations[6]

 BSA argues that because the Lanham Act does not provide a statute of limitations for actions of fraud, the court must look to the analogous state limitations period. (Mot. to Dismiss at 11 (citing *Beauty Time, Inc. v. VU Skin Systems, Inc.*, 118 F.3d 140, 143 (3d Cir.1997) (applying Pennsylvania's two-year statute of

---

5. Plaintiffs allege that BSA made additional misrepresentations in BSA's subsequent filings and declarations with USPTO. (Am. Compl. at 6–9).

6. Plaintiffs are not required to negate a defense of statute of limitations in the complaint; but, if a claim is time-barred on its face, it may be dismissed. *W. Palm Gardens Villas Condo. Ass'n, Inc. v. Aspen Specialty Ins. Co.*, No. 11–23912–CIV, 2012 WL 3017083, at *2 (S.D.Fla. June 25, 2012) (citing *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir.2004)).

limitations for fraud to a claim of fraud under the Lanham Act)). After the Third Circuit's decision in *Beauty Time*, however, another panel of the Third Circuit in 2001 rejected that position, *see Marshak v. Treadwell*, 240 F.3d 184, 192 (3d Cir.2001), stating that "the language of the Lanham Act makes it clear that a claim for cancellation of a mark based on fraudulent procurement and a defense to an otherwise incontestable mark on a similar ground may be asserted at any time." *Id.* at 193. While some courts have adopted the analogous state law statute of limitations approach,[7] the Eleventh Circuit has not taken a position on the issue. The motion to dismiss on this ground will be denied;

**F. Counts Five through Seven**

 BSA alleges that Plaintiffs' final three claims for unfair competition under federal and Florida law should be dismissed because: (i) Spiral U.S. does not have standing to bring the claims, (ii) the claims are pled insufficiently; (iii) the claims are barred by the statute of limitations and laches, and (iv) there is insufficient factual detail in Counts Six and Seven. BSA alternatively seeks a more definite statement as to Counts Six and Seven. As a preliminary matter, the analysis for unfair competition and trademark infringement under the Lanham

Act (Count 5), the Florida Deceptive and Unfair Trade Practice Act (Count 6), and Florida common law (Count 7) is the same. *Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1345 (11th Cir. 2012). Therefore, the analysis in this section applies to each of Counts Five through Seven unless noted otherwise.

*1. Standing as to Spiral U.S.*[8]

 BSA argues that because only Spiral U.K. owns the common law trademark at issue, Spiral U.S. does not have standing to bring the claims for unfair competition. Generally speaking, section § 1125(a) "affords relief to any plaintiff who shows the requisite injury from defendant's infringing conduct, without regard to any ownership interest the plaintiff may have in the trademark." *See Kroma Makeup EU, Ltd. v. Boldface Licensing + Branding, Inc.*, No. 6:14–cv–1551–Orl–40GJK, 2015 WL 1708757, at \*6 (M.D.Fla. Apr. 15, 2015). Therefore, contrary to BSA's position, the fact that Spiral U.S. does not own the trademark or hold an exclusive license is not determinative.[9]

 To have standing to bring a claim under the Lanham Act, a plaintiff must have both constitutional and statutory standing. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, —— U.S. ——, 134 S.Ct. 1377, 1387–88, 188 L.Ed.2d 392

---

7. *See, e.g., Calzaturificio Rangoni S.p.A. v. U.S. Shoe Corp.*, 868 F.Supp. 1414, 1420–21 (S.D.N.Y.1994). *Marshak* specifically rejected *Calzaturificio* because *Calzaturificio* "relied solely on a prior District Court decision that had applied a statute to a false advertising claim ... [which] is quite different from a request for cancellation [for fraud under the Lanham Act]." *Marshak*, 240 F.3d at 195 n. 5.

8. "Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ.P. 12(b)(1)." *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir.

2008) (internal quotation and citation omitted).

9. Plaintiffs are also incorrect to the extent that they apply the prudential standing test from *Trump Plaza of Palm Beaches Condo. Ass'n, Inc. v. Rosenthal*, No. 08–80408–CIV, 2009 WL 1812743 (S.D.Fla. June 24, 2009). That case relied upon *Phoenix of Broward. Inc. v. McDonald's Corp.*, 489 F.3d 1156, 1171 (11th Cir.2007), which was expressly abrogated in *Lexmark Int'l. Inc. v. Static Control Components, Inc.*, —— U.S. ——, 134 S.Ct. 1377, 1387–88, 188 L.Ed.2d 392 (2014).

(2014). BSA does not challenge constitutional standing; thus, to determine standing here, I must only consider (i) Plaintiffs' zone of interests and (ii) proximate causation. *Id.* at 1388–91. Under the zone of interests inquiry, Plaintiffs must establish that they are of the class "whose interests 'fall within the zone of interest protected by the law invoked.'" *Lexmark,* 134 S.Ct. at 1388 (quoting *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)). The zone of interests relevant to Plaintiffs' claims is "persons engaged in [commerce within the control of Congress] against unfair competition." *Id.* (alteration in original) (quoting 15 U.S.C. § 1127). Specifically, Plaintiffs must demonstrate "a cognizable commercial interest in reputation or sales." [10] *Id.* at 1390. Second, Plaintiffs must demonstrate that their injuries were proximately caused by conduct that the statute prohibits. *See id.* "Put differently, the proximate-cause requirement generally bars suits for alleged harm that is 'too remote' from the defendant's unlawful conduct." *Id.*

[26] Here, Spiral U.S. falls within the zone of interests protected by the Lanham Act and also sufficiently pleads that its injuries were proximately caused by the infringing conduct of BSA. Spiral U.K. manufactures and distributes goods bearing its trademark to Spiral U.S., which then sells those goods to purchasers in the United States. (Am. Compl. at 3). Spiral U.S. may also sell the goods to third parties within the U.S. (*Id.*). Moreover, Spiral U.S. and the trademark's owner, Spiral U.K., are "related companies having overlapping management." (*Id.*). From these facts alone, it is clear that Spiral U.S. has a cognizable commercial interest in the reputation or sales of the products bearing Plaintiffs' mark.

■ As to proximate cause, Plaintiffs and BSA both sell their products in the United States under similar Spiral trademarks. (*Id.* at 12). BSA's cease and desist letter stated that Plaintiffs "were engaged in federal trademark infringement and unfair competition, resulting in actual confusion, loss of good will, [and] damage to reputation." (*Id.* at 12–13). Mirroring the proximate causation allegations set forth in BSA's cease and desist letter, Plaintiffs simply counter that due to their prior use of the Spiral trademark, Plaintiffs are the superior trademark owner and that BSA's "continued use of [its mark] appears to have been utilized with the intent to cause confusion, mistake, and deception, which has caused and will continue to cause material and irreparable harm to [Plaintiffs' common law trademark]." (*Id.* at 13). These allegations are sufficient to assert that the alleged harm Spiral U.S. suffers is not too remote from BSA's alleged infringement. *See Kroma,* 2015 WL 1708757, at *4 ("At the pleadings stage, general factual allegations which show that a plaintiff has standing are sufficient to meet [the] burden."). Therefore, Plaintiffs have standing to bring their claims.

---

**10.** The test as applied in *Lexmark* referred only to a claim of false advertising brought under § 1125(a); however, several courts have applied it to other claims under § 1125(a), including claims of trademark infringement. *See Kroma,* 2015 WL 1708757, at *6; *Scholz v. Goudreau,* No. 13–cv–10951, 132 F.Supp.3d 239, 254, 2015 WL 5554012, at *10 (D.Mass. Sept. 21, 2015); *Ahmed v. Hosting.com,* 28 F.Supp.3d 82, 90 (D.Mass. 2014); *see also Springs Mills, Inc. v. Ultracashmere House, Ltd.,* 532 F.Supp. 1203, 1220 (S.D.N.Y.1982) *rev'd on other grounds,* 689 F.2d 1127 (2d Cir.1982) (describing both of the distinct causes of action under § 1225(a)—that is, false description and false association, the latter of which is akin to trademark infringement—as requiring "a commercial or competitive injury").

## 2. Sufficiency of Pleading

BSA argues that Plaintiffs fail to sufficiently plead that they have "prior use" common law trademark rights. Specifically, BSA argues that Plaintiffs do not sufficiently allege that they have engaged in continuous use of their trademarks in each of the states or territories in which they sell their goods and Plaintiffs have not alleged facts showing a likelihood of confusion or actual harm. As to the first contention, I discussed above that Plaintiffs have sufficiently pled their continuous use of their common law trademark. *See supra* section III.B. That discussion likewise applies to Counts Five through Seven.

As to BSA's second contention, viewing the allegations of the Complaint as a whole Plaintiffs sufficiently allege a likelihood of confusion or actual harm. To establish a prima facie case of unfair competition under § 1125(a), Plaintiffs must show that BSA "made unauthorized use of [Plaintiffs' enforceable trademark right] such that consumers were likely to confuse the two." *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647 (11th Cir.2007) (internal quotation and citation omitted). Drawing all plausible inferences in favor of Plaintiffs, BSA's use of the Spiral trademarks in the manufacturing, distributing, and selling of various items of clothing in overlapping geographical markets "could conceivably cause confusion" in customers. *See Axelrod v. Heyburn*, Civ. No. 09–5627, 2010 WL 1816245, at *2 (D.N.J. May 3, 2010) (finding sufficient factual allegations to survive a motion to dismiss where a defendant's "use of [a trademarked name on its website] could

conceivably cause confusion as to whether the [defendant's website] was affiliated with the [plaintiffs company]"); *see also Humboldt Wholesale, Inc. v. Humboldt Nation Distribution, LLC*, No. C–11–4144 EMC, 2012 WL 2572065, at *5 (N.D.Cal. July 2, 2012) (noting that the important inquiry is not actual confusion but "whether customers are likely to be confused about the source or sponsorship of products"). Therefore, BSA's motion on this ground fails.

## 3. Laches

BSA argues that Plaintiffs claim of unfair competition in Count Five is barred by the doctrine of laches. As noted earlier, there are three elements to the defense of laches: "(1) a delay in asserting a right or a claim; (2) that the delay was not excusable; and (3) that there was undue prejudice to the party against whom the claim is asserted." *Kason*, 120 F.3d at 1203. Because laches is a fact-intensive affirmative defense, some courts consider it an "unsuitable basis for dismissal at the pleading stage." *Pronman v. Styles*, No. 12–80674–CIV, 2013 WL 3894978, at *5 (S.D.Fla. July 26, 2013). However, if the complaint on its face shows that the doctrine of laches bars relief, it "is subject to dismissal under Rule 12(b)(6)." *Gwynn v. Rabco Leasing, Inc.*, No. 8:09–CV–2093–T–23TGW, 2010 WL 1408412, at *2 (M.D.Fla. Apr. 2, 2010) (citing *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003)).

Delay in bringing a claim is correctly [11] measured "from the time at which the plaintiff knows or should know

---

11. BSA incorrectly asserts that the delay of Plaintiffs' claim should be measured from the date BSA registered its trademark in 1999, stating that its registration provided constructive notice to Plaintiffs. While it is true that registration of a trademark is constructive notice to all *subsequent* users, Plaintiffs allege that they are a *prior* user; thus, Plaintiffs would not be subject to the constructive notice provision of the Lanham Act. *See Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 200, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985).

she has a provable claim for infringement." *Kason,* 120 F.3d at 1206. This is because [t]he senior user has no obligation to sue until the likelihood of confusion looms large ... [;] any other rule 'would require each trademark owner to sue first and ask questions later.'" *Id.* (quoting J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 31.19 (4th ed.1997))."[A] court should consider, in its assessment of laches, progressive encroachment, damage the plaintiff was suffering, and the likelihood of confusion at the time the plaintiff sued." *Id.* Under the doctrine of progressive encroachment, "'where a defendant begins use of a trademark ... in the market, and then directs its marketing or manufacturing efforts such that it is placed more squarely in competition with the plaintiff, the plaintiffs delay is excused.'" *Kason,* 120 F.3d at 1205.

■ Based on the facts alleged in the Complaint, it cannot be said that Plaintiffs delayed in bringing their claim; that if any delay existed, it was unreasonable; or that BSA was prejudiced by such delay. Plaintiffs allege "BSA does no publicity, marketing, or advertising for any of [its goods] bearing [the BSA mark]; BSA has "not used [its trademark] on all of [its goods]" and "only sells a very limited quantity [and] number of items listed in [its registration]." (Am. Compl. at 5 (emphasis omitted)). Based on these allegations, it is reasonable to infer that Plaintiffs were not aware of BSA or that they had a claim for infringement until they received BSA's cease and desist letter on January 22, 2015—six months before they filed the instant action. It could also readily be inferred that BSA waited sixteen years to send its cease and desist letter because it recently became "more squarely in competition" with Plaintiffs, which could excuse any delay in Plaintiffs claim. Therefore, BSA's motion on this ground must fail.

### 4. Statute of Limitations

■ Similar to its laches argument, BSA also argues that Plaintiffs' FDUTPA claim in Count Six is barred by the statute of limitations. The limitations period for a FDUTPA claim begins to run when Plaintiffs suffer actual damages. *Sundance Apartments I, Inc. v. Gen. Elec. Capital Corp.,* 581 F.Supp.2d 1215, 1223 (S.D.Fla. 2008). In its motion, BSA fails to provide a date that Plaintiffs first suffered actual damages. Moreover, while Plaintiffs allege that they suffered "irreparable harm," they, too, fail to state when such harm was first experienced. Because both parties failed to allege a date that the claim accrued, the motion must be denied on this ground.

### 5. Sufficiency of Factual Detail in Counts Six and Seven

As discussed above, the analysis for a claim of unfair competition and trademark infringement under the Lanham Act is substantially similar to that under FDUTPA and Florida common law. Because I earlier determined that Count Five was sufficiently pled, and Counts Six and Seven incorporate the allegations of Count Five, the motion to dismiss Counts Six and Seven must also be denied.

### 6. Motion for More Definite Statement of Counts Six and Seven

■ BSA alternatively seeks a more definite statement of Counts Six and Seven. A motion for more definite statement is proper only "if a pleading ... is so vague or ambiguous that a party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Furthermore, a motion for more definite statement is disfavored under the law and is "not to be used as a substitute for discovery." *Coughlin v.*

*Wal–Mart Stores E., LP*, No. 8:07–CV–02189–T–30EA, 2008 WL 2704381, at *1 (M.D.Fla. July 8, 2008). As discussed in sections III.A. and III.F.2, the Amended Complaint provides sufficient notice of Plaintiffs' claims against BSA. BSA can seek any additional factual information in discovery. For this reason, the motion fails on this ground.

## IV. Conclusion

In accordance with the foregoing, BSA's Motion to Dismiss Amended Complaint (Doc. 27) is **DENIED.**

**DONE** and **ORDERED** in Orlando, Florida, on November 24, 2015.